Slip Op. 14 - 60

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHANGZHOU HAWD FLOORING CO., LTD., *et al.*, <br><br>             Plaintiffs, <br><br>            v. <br><br> UNITED STATES, <br><br>            Defendant, | Before: Donald C. Pogue, <br>            Chief Judge <br><br> Court No. 12-00020[1] |

OPINION AND ORDER

[motion to intervene granted]

Dated: May 29, 2014

     Gregory S. Menegaz and J. Kevin Horgan, deKieffer & Horgan, PLLC, Washington, DC, for the Plaintiffs.

     Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer, Sarah M. Wyss, Rebecca M. Janz, and Daniel R. Wilson, Mowry & Grimson, PLLC, of Washington, DC, for the Plaintiff-Intervenor.

---

[1] This action was originally consolidated with Court Numbers 11-00452, 12-00007, and 12-00013, under Consolidated Court Number 12-00007. Order May 31, 2012, Consol. Ct. No. 12-00007, ECF No. 37.  Court Number 11-00452 was ultimately severed and dismissed. Am. Order Nov. 27, 2012, Consol. Ct. No. 12-00007, ECF No. 75; Judgment, Ct. No. 11-00452, ECF No. 68; see Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, __ CIT __, 853 F. Supp. 2d 1290 (2012); Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, __ CIT __, 865 F. Supp. 2d 1300 (2012). Following the court's decision in Baroque Timber Indus. (Zhongshan) Co. v. United States, __ CIT __, 971 F. Supp. 2d 1333 (2014) ("Baroque IV"), Court Numbers 12-00007 and 12-00013 were also severed and final judgment entered. Order Granting Mot. to Sever, Apr. 22, 2014, Consol. Ct. No. 12-00007, ECF No. 162; Judgment, Ct. No. 12-00007, ECF No. 163; Judgment, Ct. No. 12-00013, ECF No. 32.

Harold Deen Kaplan, Hogan Lovells US LLP, of Washington, DC, for movants Armstrong Wood Products (Kunshan) Co., Ltd., Lumber Liquidators Services, LLC, and Home Legend, LLC. On the brief were Mark R. Ludwikowski and Kristen S. Smith, and Lana Nigro, Sandler, Travis & Rosenberg, PA, of Washington, DC.

Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for the Defendant. Appearing with him were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director. Of counsel was Melissa Brewer, Attorney, International Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Jeffrey S. Levin, Levin Trade Law, P.C., of Bethesda, MD, for the Defendant-Intervenor.

**Pogue, Chief Judge**: Armstrong Wood Products (Kunshan) Co., Lumber Liquidators Services, LLC, and Home Legend, LLC (collectively "Armstrong"),[2] move for "party litigant re-designation," from Defendant-Intervenor in (the now severed and dismissed) Court Number 11-00452 to Plaintiff-Intervenor in (the now remaining) Court Number 12-00020. Armstrong's Mot. at 2; see also supra note 1. The court construes this motion as a motion

---

[2] Armstrong Wood Products (Kunshan) Co., Ltd., is a producer of multilayered wood flooring. Lumber Liquidators Services, LLC and Home Legend, LLC are U.S. importers of Armstrong's products. All three participated in the underlying antidumping investigation, Armstrong as a separate rate respondent, Lumber Liquidators and Home Legend as Respondent interested parties. See Intervenor Defs.' Mot. to be Re-Designated as Intervenor Pls. & Req. for Correction to Footnote 6 to Slip Op. 14-35 ("Armstrong's Mot."), Consol. Ct. No. 12-00007, ECF No. 160, at 1-2; see also Consent Mot. to Intervene Jan. 13, 2012, Ct. No. 11-00452, ECF No. 28, at 2.

to intervene pursuant to USCIT Rule 24 in Court No. 12-00020, out of time, as Plaintiff-Intervenor, and grants the motion, finding good cause for Armstrong's late filing in the context and circumstances present here.

**BACKGROUND**

I. <u>Four Initial Actions Challenging Commerce's Final Determination of Sales at Less Than Fair Value of Multilayered Wood Flooring from the People's Republic of China</u>

This litigation arises from the Coalition for American Hardwood Parity's ("CAHP") October 21, 2010 petition to the Department of Commerce ("Commerce" or the "Department") alleging that imports of multilayered wood flooring from the People's Republic of China ("PRC" or "China") were being dumped in the United States.  In response, Commerce initiated an antidumping duty investigation for the period of April 1, 2010 through September 30, 2010. <u>Multilayered Wood Flooring from the People's Republic of China</u>, 75 Fed. Reg. 70,714 (Dep't Commerce Nov. 18, 2010) (initiation of antidumping duty investigation).  Armstrong was not individually investigated, but qualified for a separate rate. <u>Multilayered Wood Flooring from the People's Republic of China</u>, 76 Fed. Reg. 30,656, 30,661 n.33 (Dep't Commerce May 26, 2011) (preliminary determination of sales at less than fair value) (granting Armstrong separate rate status).

The final determination in the investigation[3] was the subject of four separate challenges before this Court, pursuant to § 516A(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2) (2006) and 28 U.S.C. § 1581(c) (2006)[4]:

(1) Coalition for American Hardwood Parity v. United States, Court Number 11-00452, brought by the Petitioner, see Compl., Ct. No. 11-00452, ECF No. 7, at ¶4;

(2) Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States, Court Number 12-00007, brought by individually-investigated mandatory respondents (collectively the "Samling Group"), see Compl., Ct. No. 12-00007, ECF No. 9, at ¶3;

(3) Zhejiang Layo Wood Indus. Co. v. United States, Court Number 12-00013, brought by another individually-investigated mandatory respondent ("Layo Wood"), see Compl., Ct. No. 12-00013, ECF No. 9, at ¶ 1; and

(4) Changzhou Hawd Flooring Co., Ltd. v. United States, Court Number 12-00020, brought by the non-individually investigated respondents who qualified for a separate rate ("Separate Rate Respondents"), see Compl., Ct.t No. 12-00020, ECF No. 9, at ¶1.

Armstrong was not among the plaintiffs in the separate rate respondents' challenge and did not, at any time, formally seek to intervene as Plaintiff-Intervenor in that case. Instead,

---

[3] Multilayered Wood Flooring from the People's Republic of China, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final determination of sales at less than fair value); Multilayered Wood Flooring From the People's Republic of China, 76 Fed. Reg. 76,690 (Dep't Commerce Dec. 8, 2011) (amended final determination of sales at less than fair value and antidumping duty order) ("Amended Final Determination").

[4] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

Armstrong sought and received permission to intervene as Defendant-Intervenor in Court Number 11-00452, defending the results of the investigation against the Petitioner's challenge. Consent Mot. to Intervene [as Def.-Intervenor], Ct. No. 11-00452, ECF No. 28; Order Jan. 17, 2012, Ct. No. 11-00452, ECF No. 41 (granting Armstrong's motion to intervene as Defendant-Intervenor).[5] Armstrong did not move to intervene, on the Plaintiff's or Defendant's side, in any of the other three actions.

## II.   Consolidation Under Consolidated Court Number 12-00007

The court, after consultation with the parties, consolidated Court Numbers 11-00452, 12-00007, 12-00013, and 12-00020 into Consolidated Court No. 12-00007; the respondent plaintiffs were ordered to file a joint opening brief. Order May 31, 2012, Ct. No. 12-00007, ECF No. 37.  When the respondent plaintiffs filed their Joint Motion for Judgment on the Agency Record Pursuant to Rule 56.2 in accordance with this order,

---

[5] When the United States moved to dismiss Petitioner's challenge for lack of jurisdiction, Def.'s Mot. to Dismiss Pl.'s Compl. for Lack of Jurisdiction, Ct. No. 11-00452, ECF No. 52, Armstrong supported the motion. Joint Letter in Lieu of Supplemental Br., Ct. No. 11-00452 ECF No. 55.  That is, Armstrong's position in the sole case to which it was formally made a party was that the antidumping investigation results should be sustained as is, and that Petitioner's challenge thereto should be dismissed. See id.

Armstrong was not listed as a plaintiff respondent or as any party on that brief. See Resp'ts' Mot. for J. on the Agency R. Pursuant to Rule 56.2, Ct. No. 12-00007, ECF No. 63.

Thereafter, the court granted Defendant's motion to dismiss Petitioner's challenge (Court Number 11-00452) for lack of subject matter jurisdiction. Baroque, __ CIT at __, 865 F. Supp. 2d at 1309. Although the court certified some legal issues in that case for interlocutory appeal,[6] the Petitioner never filed an appeal. Its challenge was accordingly severed from the consolidated action, and final judgment was entered in Court No. 11-00452, dismissing the case, on November 27, 2012. Am. Order Nov. 27, 2012, Consol. Ct. No. 12-00007, ECF No. 75; Judgment, Ct. No. 11-00452, ECF No. 68.

Although Armstrong was never formally made a party to any challenge to the antidumping duty investigation, other than being granted Defendant-Intervenor status in the (subsequently dismissed) Petitioner's challenge (Court No. 11-00452), and although Armstrong was not listed as a party on the respondents' joint opening brief, Armstrong appeared on the respondents' reply brief in the remaining consolidated action, for the first time joining the arguments made by the respondent plaintiffs in

---

[6] See id. at 1310; Order Oct. 19, 2012, Consol. Ct. No. 12-00007, ECF No. 70 (certifying issues for interlocutory appeal to the Court of Appeals for the Federal Circuit).

challenging (as opposed to defending, as it had done in Court No. 11-00452) the results of the investigation. See Resp't Pls.' Reply, Consol. Ct. No. 12-00007, ECF No. 87, at 1, 40. Thereafter, Armstrong has consistently appeared on briefing challenging Commerce's determinations in the investigation at issue.[7]

III. Court-Ordered Remand and Commerce's Subsequent Redetermination

The court remanded the results of the antidumping duty investigation. Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States, ___ CIT ___, 925 F. Supp. 2d 1332 (2013). Commerce filed its redetermination on November 14, 2013. See Final Results of Redetermination Pursuant to Court Order, Consol. Ct. No. 12-00007, ECF No. 132 ("Redetermination"). Commerce's Redetermination explicitly addresses Armstrong's challenge, during the remand proceeding, to Commerce's calculation of the separate rate. Id. at 38.[8]

---

[7] See Letter in Resp. to Ct. Req. for Comments on Targeted Dumping Remedy, Consol. Ct. No. 12-00007, ECF No. 110; Reply Br. of Certain Resp't-Appellants, Consol. Ct. No. 12-00007, ECF No. 121; Comments in Opp'n to Final Results of Redetermination Pursuant to Ct. Order ("Armstrong's Comments on Remand Results"), Consol. Ct. No. 12-00007, ECF No. 134; Resp. of [*inter alia*, Armstrong] to the Question Presented in the Ct.'s Dec. 20, 2013 Order, Consol. Ct. No. 12-00007, ECF No. 148.

[8] Armstrong argued, as did the other separate rate respondents, that the agency should not have used the adverse-inference-based
(footnote continued)

Following filing of the Redetermination, Armstrong continued to pursue this challenge in its briefing. See Armstrong's Comments on Remand Results, Consol. Ct. No. 12-00007, ECF No. 134. The Government grouped Armstrong together with the other separate-rate parties and acknowledged Armstrong's comments as "plaintiffs who submitted comments." Def.'s Resp. to Comments Upon Remand Redetermination, Consol. Ct. No. 12-00007, ECF No. 141 at 1 n.1. Defendant-Intervenor CAHP also acknowledged Armstrong's comments in its reply comments. Def.-Intervenor's Reply Comments Regarding Dep't Commerce Final Results of Redetermination Pursuant to Ct. Remand, Dec. 13, 2013, Consol. Ct. No. 12-00007, ECF No. 140, at 1 n.1.

IV.  Second Remand and Severance

The court affirmed in part and remanded in part Commerce's Redetermination. Baroque IV, __ CIT at __, 971 F. Supp. 2d at 1346. The court sustained most of Commerce's findings, including the assignment of *de minimis* rates to the mandatory respondents. Id. at 1338 n.15. However, the separate rate calculation[9] was remanded for further consideration, as

---

China-wide rate as part of its calculation of the separate rate. Id. at 38-39.

[9] Because all three mandatory respondents had received *de minimis*
(footnote continued)

Commerce's redetermination was unsupported by a reasonable reading of the record. Id. at 1342-46.

Plaintiffs Samling Group and Layo Wood then moved to sever their appeals (Court Numbers 12-00007 and 12-00013) from the sole remaining action under Consol. Court No. 12-00007 (the Separate Rate Respondents' appeal, Court No. 12-00020), and to have final judgment entered. Pls.' Samling Grp. & Layo Wood Joint Mot. to Sever and for Entry J., Consol. Ct. No. 12-00007, ECF No. 159.  The court granted this motion, severing both Court Numbers 12-00007 and 12-00013 and entering final judgment therein. See *supra* note 1.

Before severance and final judgment was granted in Court Numbers 12-00007 and 12-00013, however, on April 14, 2014, Armstrong moved to amend the court's most recent opinion so as to include Armstrong in the list of separate rate plaintiffs in Baroque IV and to be re-designated as Plaintiff-Intervenor in Consol. Court Number 12-00007. Armstrong's Mot., Consol. Ct. No.

---

rates, Commerce calculated the separate rate margin under the 19 U.S.C. § 1673d(c)(5)(B) "any reasonable method" provision, using a simple average of the three mandatory rates and the PRC-wide adverse inference rate (the highest calculated margin from among the mandatory respondents). Id. at 1339.  The court found that in doing so, Commerce had failed to meet the substantial evidence standard because it had not "articulated a rational connection between the record evidence and the rate applied to the separate rate companies," nor did Commerce explain "how its determination [bore] a relationship to [the separate rate respondent's] economic reality." Id. at 1336.

12-00007, ECF No. 160.  This motion is now at issue before the court.

**DISCUSSION**

I. Consolidation

This Court may consolidate actions that present common questions of law or fact. USCIT R. 42(a).[10]  However, "consolidation 'does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.'" Dorbest Ltd. v. United States, 32 CIT 185, 220-21, 547 F. Supp. 2d 1321, 1351 (2008) (quoting Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933)).[11]

---

[10] The rule provides, in pertinent part: "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." USCIT R. 42(a); cf. Fed. R. Civ. P. 42(a)(2) ("If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . .").

[11] Johnson addressed consolidation under 28 U.S.C. § 734. 289 U.S. at 496.  This statute has since been repealed and replaced by Fed. R. Civ. P. 42(a).  However, the primary source of authority for interpreting the consolidation rule remains Johnson. See, e.g., In re Cmty. Bank of N. Va., 418 F.3d 277, 298 n.12 (3d Cir. 2005) (affirming that Johnson is the "authoritative" statement on the law of consolidation); Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc., 271 F.3d 164, 168 (4th Cir. 2001) (quoting and applying Johnson, 289 U.S. at 496-97); McKenzie v. United States, 678 F.2d 571, 574 (5th Cir. 1982) (citing, *inter alia*, Johnson, 289 U.S. at 496-97, for the proposition that "consolidation does not cause one civil action to emerge from two; the actions do not lose their separate identity; the parties to one action do not become parties to the other"); Twaddle v. Diem, 200 F. App'x 435, 438 n.4 (6th Cir. 2006) (citing Johnson, 289 U.S. at 496-97, for the proposition
(footnote continued)

Consequently, while Armstrong was properly a Defendant-Intervenor in Court Number 11-00452,[12] when the court consolidated that case with Court Numbers 12-00007, 12-00013, and 12-00020, it did not automatically render Armstrong a Plaintiff-Intervenor in any of those cases.[13]

Accordingly, the court construes Armstrong's Motion as a motion pursuant to USCIT Rule 24 to intervene as Plaintiff-

---

that "consolidation does not merge the suits into a single action, change the rights of the parties, or make parties in one suit parties in the other"); Enter. Bank v. Saettele, 21 F.3d 233, 235 (8th Cir. 1994) (quoting and applying Johnson, 289 U.S. at 496-97); Schnabel v. Lui, 302 F.3d 1023, 1035 (9th Cir. 2002) (noting that "the primary source" of the consolidation rule followed by the majority of circuits is Johnson, 289 U.S. at 496-97); Chaara v. Intel Corp., 245 F. App'x 784, 787, 790 (10th Cir. 2007) ("[C]onsolidation is an artificial link forged by a court for the administrative convenience of the parties; it fails to erase the fact that, underneath consolidation's facade, lie two individual cases.") (quoting the district court's opinion, which was affirmed "for substantially the reasons given by the district court"); Farese v. Scherer, 342 F.3d 1223, 1228 (11th Cir. 2003) (relying on Johnson, 289 U.S. at 496-97, to conclude that consolidation did not alter the fees-paid status of one of the constituent cases).

[12] See Order Granting Mot. to Intervene, Ct. No. 11-00452, ECF No. 41.

[13] Cf. Dorbest, 32 CIT at 220-21, 547 F. Supp. 2d at 1350-51 (finding that Art Heritage was "not entitled to a revised all-others rate for claims brought by [plaintiff]" because while Art Heritage was a plaintiff-intervenor in a case consolidated with plaintiff's case, it was not a plaintiff-intervenor in plaintiff's case itself); Silver Reed Am., Inc. v. United States, 9 CIT 1, 7-8, 600 F. Supp. 852, 857-58 (1985) (holding that, because consolidation did not merge constituent actions, a defendant-intervenor in one of the actions was not barred from intervening as a plaintiff-intervenor in the other).

Intervenor in Court Number 12-00020 (the remaining Separate Rate Respondents' challenge).

## II. Intervention

Intervention is governed by 28 U.S.C. § 2631(j)[14] and USCIT Rule 24.[15] Where, as here, the court has jurisdiction under 28 U.S.C. § 1581(c), intervention may be sought only as a matter of right. See 28 U.S.C. § 2631(j)(1)(B).[16] Armstrong, as

---

[14] See 28 U.S.C. § 2631(j)(1)(B) ("Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that . . . in a civil action under section 516A of the Tariff Act of 1930, only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right . . . .").

[15] See USCIT R. 24(a)(3) ("In an action described in 28 U.S.C. § 1581(c), a timely motion must be made no later than 30 days after the date of service of the complaint as provided for in Rule 3(f), unless for good cause shown at such later time for the following reasons: (i) mistake, inadvertence, surprise or excusable neglect; or (ii) under circumstances in which by due diligence a motion to intervene under this subsection could not have been made within the 30-day period. Also, in an action described in 28 U.S.C. § 1581(c), at the time a party's motion for intervention is made, attorneys for that party are required to comply with the procedures set forth in Rule 73.2(c) by filing of a Business Proprietary Information Certification where appropriate.").

[16] See, e.g., Ontario Forest Indus. Ass'n v. United States, 30 CIT 1117, 1130 n.12, 444 F. Supp. 2d 1309, 1322 n.12 (2006) ("[U]nder 28 U.S.C. § 1581(c), intervention may only be sought as a matter of right.") (citing 28 U.S.C. § 2631(j)(B)); Dofasco Inc. v. United States, 31 CIT 1592, 1594-95, 519 F. Supp. 2d 1284, 1286 (2007) (same).

a separate rate respondent, is an interested party[17] that was party to the underlying investigation,[18] and therefore may intervene in the Separate Rate Respondent's challenge, Court No. 12-00020, as a matter of right, within 30 days after service of the complaint, or at a later date for good cause shown. USCIT R. 24(a)(3). Armstrong did not timely intervene within 30 days of service of the complaint in Court Number 12-00020,[19] but may still intervene if good cause is shown.

Good cause is "mistake, inadvertence, surprise or excusable neglect."[20] USCIT R. 24(a)(3). Relevant case law is sparse[21] but uniform in its understanding of good cause as, "at

---

[17] See 28 U.S.C. § 2631(k)(1) (providing that "'interested party' has the meaning given such term in [19 U.S.C. § 1677(9)]); 19 U.S.C. § 1677(9)(A) (defining "interested party" to include "a foreign manufacturer, producer, or exporter ... of subject merchandise").

[18] Armstrong was a non-individually investigated respondent who qualified for a separate rate. See Amended Final Determination, 76 Fed. Reg. at 76,692 (assigning the all-others separate rate to Armstrong).

[19] The complaint in Court Number 12-00020 was filed on February 8, 2012. Comp., Ct. No. 12-00020, ECF No. 9. Armstrong moved to intervene on April 14, 2014. Armstrong's Mot., Consol. Ct. No. 12-00007, ECF No. 160.

[20] Good cause may also be found if the delay is the result of "circumstances in which by due diligence a motion to intervene under this subsection could not have been made within the 30-day period." USCIT R. 24(a)(3)(ii).

[21] Cf. Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States, 30 CIT 542, 545, 425 F. Supp. 2d 1374, 1376
(footnote continued)

bottom," an equitable determination that takes into account "all relevant circumstances surrounding the party's omission." See Pioneer, 507 U.S. at 395 (discussing the excusable neglect analysis).[22]  Relevant circumstances include "the danger of

---

(2006) ("The relevant caselaw is not particularly robust."). Mistake, inadvertence, and surprise are as yet undefined. They may, however, be taken to carry their ordinary, contemporary, common meanings. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 388 (1993) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)).  A (short) line of cases has developed around excusable neglect. Siam Food Prods. Pub. Co. v. United States, 22 CIT 826, 828, 24 F. Supp. 2d 276, 279 (1998) (defining Rule 24(a)(3) "excusable neglect" as an analysis of "all relevant circumstances surrounding the party's omission . . . [including] the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith") (quoting Pioneer, 507 U.S. at 395, and E.I. DuPont DeNemours & Co. v. United States, 22 CIT 601, 603, 15 F. Supp. 2d 859, 861 (1998)) (alteration in the original); Home Prods. Int'l, Inc. v. United States, 31 CIT 1706, 1709, 521 F. Supp. 2d 1382, 1385 (2007) (relying on Pioneer, 507 U.S. at 395, and Siam Food, 22 CIT at 828, 24 F. Supp. 2d at 279); GPX Int'l Tire Corp. v. United States, 33 CIT 114, 115 (2009) (not reported in the Federal Supplement) (same).

[22] See Home Prods., 31 CIT at 1709, 521 F. Supp. 2d at 1385 (using an equitable balancing test to analyze excusable neglect); GPX, 33 CIT at 115 (same); Habas Sinai, 30 CIT at 545, 425 F. Supp. 2d at 1377-80 (declining to define "mistake, inadvertence, surprise, or excusable neglect" and instead considering the prejudice that granting a motion to intervene out of time would cause the non-moving parties); Siam Food, 22 CIT at 828, 24 F. Supp. 2d at 279-80 (using an equitable balancing test to analyze excusable neglect); Co-Steel Raritan. Inc. v. U.S. Int'l Trade Comm'n, 26 CIT 1131, 1132-34 (2002) (not reported in the Federal Supplement) (denying motion to intervene, finding no "good cause" without specific discussion of "mistake, inadvertence, surprise or excusable neglect"), vacated and remanded on other grounds, 357 F.3d 1294 (2004);

(footnote continued)

prejudice to the [non-movants], length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer, 507 U.S. at 395.[23]

Here, Armstrong seems to have proceeded under the mistaken belief, without objection and in good faith, that by virtue of its participation as a separate rate respondent in the underlying administrative proceedings, consolidation changed its status from that of Defendant-Intervenor in Court Number 11-00452 to that of a Plaintiff-Intervenor in Consolidated Court

---

Geum Poong Corp. v. United States, 26 CIT 908, 909, 217 F. Supp. 2d 1342, 1344 (2002) (finding that, while "[w]hat circumstances" constitute good cause have "not been made clear," USCIT Rule 24(a) addresses the "questions of balancing court efficiency and the parties' burdens" and "must be applied even-handedly to all concerned").

[23] While the Court in Pioneer used this multifactor balancing test for 'excusable neglect' (under Fed. R. Bankr. P. 9006(b)(1)), Pioneer, 507 U.S. at 395, and this Court has since adopted it for excusable neglect under USCIT Rule 24(a)(3), Siam Food, 22 CIT at 828, 24 F. Supp. 2d at 279, the Supreme Court's reasoning suggests that this analysis can and should apply to mistake, surprise, and inadvertence as well. See Pioneer, 507 U.S. at 388 ("Hence, by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.").

Number 12-00007.[24]

Granting Armstrong Plaintiff-Intervenor status in the remaining Court No. 12-00020 now, so that it may continue litigating the separate rate issues the investigation, poses no danger of prejudice to the other parties. Armstrong does not seek to raise any issue not already brought before the court by the plaintiffs.[25] Armstrong fully participated and was treated by the non-moving parties in Consol. Court No. 12-00007 as if already a Plaintiff-Intervenor.[26] Making Armstrong a Plaintiff-Intervenor, therefore, would in no way "interfere with the

---

[24] See Armstrong's Mot., Consol. Ct. No. 12-00007, ECF No. 160 at 3 (Armstrong requests that it be listed with Plaintiffs and Plaintiff-Intervenors in Consolidated Court Number 12-00007, in Baroque IV, __ CIT at __, 971 F. Supp. 2d at 1337 n.6, because of its participation as respondent in the underlying administrative review, believing the omission a "technical oversight or clerical error," on the part of the court, rather than reflective of its status as Defendant-Intervenor in the severed and dismissed Court Number 11-00452. Armstrong also requests "party litigant re-designation" as Plaintiff-Intervenor, rather than filing a motion to intervene, as is required).

[25] Cf. Silver Reed, 9 CIT at 7, 600 F. Supp. at 857; see also Home Products, 31 CIT at 1709, 521 F. Supp. 2d at 1385 (finding little prejudice to non-moving parties given restricted, supporting role an intervenor takes).

[26] See *supra* note 7, and accompanying text; Def.'s Resp. to Comments Upon Remand Redetermination, Consol. Ct. No. 12-00007, ECF No. 141 at 1 n.1; Def.-Intervenor's Reply Comments Regarding Dep't Commerce Final Results of Redetermination Pursuant to Ct. Remand, Dec. 13, 2013, Consol. Ct. No. 12-00007, ECF No. 140, at 1 n.1.

progress of the litigation." Silver Reed, 9 CIT at 7, 600 F. Supp. at 857.  Conversely, denying Armstrong Plaintiff-Intervenor status presents considerable danger of prejudice to Armstrong, especially given its previous participation, and because it would deny Armstrong the benefit of the separate rate resulting from the Baroque IV remand.[27]  The absence of prejudice to the non-moving parties, combined with Armstrong's good faith, "weigh strongly in favor of permitting [late intervention]." Pioneer, 507 U.S. at 398.[28]

     Accordingly, given the unique context here, because Armstrong is an interested party that was party to the underlying administrative review and filed out of time for good cause, see USCIT R. 24(a)(3), the court grants Armstrong's motion to intervene as Plaintiff-Intervenor in the remaining separate rates case, Court No. 12-00020.[29]

---

[27] Cf. Siam Food, 22 CIT at 829, 24 F. Supp. 2d at 279 ("Parties with identified interests in the results of a review have the option to protect those interests by intervening in the proceedings.  To not allow them to do so is to prejudice them." (citation omitted)).

[28] See also id. ("To be sure, were there any evidence of prejudice to [the non-movant] or to judicial administration in this case, or any indication at all of bad faith, we could not say that the [court] [would have] abused its discretion in declining to find the neglect to be 'excusable.'").

[29] Cf. Silver Reed, 9 CIT at 5-8, 600 F. Supp. at 857-58 (granting a party's motion to intervene as Plaintiff-Intervenor in an action consolidated with another to which the same party
                                                       (footnote continued)

**CONCLUSION**

Armstrong has moved for "party litigant re-designation." Armstrong's Mot., Consol. Ct. No. 12-00007, ECF No. 160, at 2.  The court construes this as a motion to intervene pursuant to USCIT Rule 24 in Court No. 12-00020, out of time, as Plaintiff-Intervenor.

Because Armstrong is an interested party that was party to the underlying administrative proceedings, moving out of time but with good cause, see USCIT R. 24(a)(3), the court grants Armstrong's motion to intervene as Plaintiff-Intervenor in Court No. 12-00020.  Armstrong's attorneys have until June 10, 2014 to come into procedural compliance with Armstrong's new status as Plaintiff-Intervenor in Court No. 12-00020 (e.g., filing Forms 11, 13, and 17).

IT IS SO ORDERED.

                                /s/ Donald C. Pogue
                                Donald C. Pogue, Chief Judge

Dated: May 29, 2014
       New York, NY

---

was Defendant-Intervenor because of lack of prejudice to the non-moving parties).