Slip Op. 15 - 07

UNITED STATES COURT OF INTERNATIONAL TRADE

CHANGZHOU HAWD FLOORING CO.,
LTD., *et al.*,

          Plaintiffs,

          v.

UNITED STATES,

          Defendant.

Before: Donald C. Pogue,
       Senior Judge

Court No. 12-00020

OPINION and ORDER

[remand redetermination affirmed in part and remanded in part]

Dated: January 23, 2015

     Gregory S. Menegaz and J. Kevin Horgan, deKieffer &
Horgan, PLLC, of Washington, DC, for the Plaintiffs.

     Kristin H. Mowry, Jeffrey S. Grimson, Jill A. Cramer,
Sarah M. Wyss, and Daniel R. Wilson, Mowry & Grimson, PLLC, of
Washington, DC, for Plaintiff-Intervenor Fine Furniture
(Shanghai) Ltd.

     H. Deen Kaplan, Craig A. Lewis, and Mark S. McConnell,
Hogan Lovells US LLP, of Washington, DC, for Plaintiff-
Intervenor Armstrong Wood Products (Kunshan) Co., Ltd.

     Mark Ludwikowski, Kristen Smith, and Lana Nigro,
Sandler, Travis & Rosenberg, PA, of Washington, DC for
Plaintiff-Intervenors Lumber Liquidators Services, LLC, and Home
Legend, LLC.

     Alexander V. Sverdlov, Trial Attorney, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice,
of Washington, DC, for Defendant.  With him on the brief were
Joyce R. Branda, Acting Assistant Attorney General, Jeanne E.
Davidson, Director, and Claudia Burke, Assistant Director.  Of
counsel was Shana Hofstetter, Attorney, Office of the Chief
Counsel for Trade Enforcement and Compliance, U.S. Department of
Commerce, of Washington, DC.

Jeffrey S. Levin, Levin Trade Law, P.C., of Bethesda, MD, for the Defendant-Intervenor Coalition for American Hardwood Parity.

**Pogue, Senior Judge**: This action is again before the court following a second redetermination and a voluntary partial third redetermination.  In the third redetermination, the Department of Commerce ("Commerce") reaffirmed the second redetermination of the final results of the antidumping ("AD") duty investigation of multilayered wood flooring from the People's Republic of China ("PRC" or "China").[1]

Still at issue are the AD duty rates assigned to eight separate rate respondents – the Plaintiffs and Plaintiff-Intervenors here (collectively, "Plaintiffs")[2] – for the underlying AD duty investigation.  Specifically, Plaintiffs challenge Commerce's decision to assign seven of them an unspecified, non-*de minimis* AD duty rate for the investigation,

---

[1] Multilayered Wood Flooring from the [PRC], 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final determination of sales at less than fair value) ("Final Determination") and accompanying Issues & Decision Memorandum, A-570-970, POI Apr. 1, 2010 – Sept. 30, 2010 (Oct. 11, 2011) ("Final Determination I & D Mem.").  Commerce initiated this investigation in response to a petition by Defendant-Intervenor (the Coalition for American Hardwood Parity ("CAHP")), alleging dumping of multilayered wood flooring from the PRC on the U.S. market. Multilayered Wood Flooring from the [PRC], 75 Fed. Reg. 70,714 (Dep't Commerce Nov. 18, 2010) (initiation of antidumping duty investigation).

[2] Plaintiffs are cooperative, non-individually investigated respondents in the underlying administrative investigation. They have all established their entitlement to a separate rate from the PRC-wide entity. See Final Determination, 76 Fed. Reg. at 64,321-22.

to provide for liquidation of their entries at the rates
established for them in the first administrative review[3] (as
limited by the provisional measures deposit cap), and to
initiate a full investigation of the remaining eighth Plaintiff,
Changzhou Hawd Flooring Co. ("Changzhou Hawd"), as it has
certified no shipment of subject merchandise in the first
administrative review and therefore otherwise lacks any relevant
calculated rate. The court has jurisdiction pursuant to
§ 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended,
19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c) (2012).[4]

        As explained below, Commerce's determination regarding
the group of seven Plaintiffs is based on a reasonable reading
of the law and record evidence. However, the agency's decision
to conduct, at this late date, a full investigation of Changzhou
Hawd is arbitrary and capricious. Therefore, the court remands
again for further consideration in accordance with this opinion.

---

[3] See Multilayered Wood Flooring from the [PRC], 78 Fed. Reg.
70,267 (Dep't Commerce Nov. 25, 2013) (preliminary results of
antidumping duty administrative review; 2011-2012) ("Preliminary
Review"); Multilayered Wood Flooring from the [PRC], 79 Fed.
Reg. 26,712 (Dep't Commerce May 9, 2014) (final results of
antidumping duty administrative review; 2011-2012) ("Final
Review"); Multilayered Wood Flooring from the [PRC], 79 Fed.
Reg. 35,314 (Dep't Commerce June 20, 2014) (amended final
results of antidumping duty administrative review; 2011-2012)
("Amended Final Review"). The first administrative review is
currently at issue before this Court. See Fine Furniture
(Shanghai) Ltd. v. United States, Consol. Ct. No. 14-00135.

[4] All further citations to the Tariff Act of 1930, as amended,
are to Title 19 of the U.S. Code, 2012 edition.

## BACKGROUND

      Litigation of the separate rate[5] has so far produced two court opinions,[6] two corresponding redeterminations by Commerce,[7] and, most recently, a voluntary remand and redetermination by Commerce.[8]

      In each successive determination, Commerce has established the separate rate in a different way.  In the <u>Final</u>

---

[5] Plaintiffs' action was previously consolidated with Court Numbers 11-00452, 12-00007, and 12-00013, under Consolidated Court Number 12-00007. Order, May 31, 2012, Consol. Ct. No. 12-00007, ECF No. 37. Court Number 11-00452 was ultimately severed and dismissed. Am. Order Nov. 27, 2012, Consol. Ct. No. 12-00007, ECF No. 75; Judgment, Ct. No. 11-00452, ECF No. 68; see <u>Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States</u>, __ CIT __, 853 F. Supp. 2d 1290 (2012); <u>Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States</u>, __ CIT __, 865 F. Supp. 2d 1300 (2012).

[6] <u>Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States</u>, ___ CIT ___, 925 F. Supp. 2d 1332 (2013); <u>Baroque Timber Indus. (Zhongshan) Co., Ltd. v. United States</u>, __ CIT __, 971 F. Supp. 2d 1333 (2014).

[7] Final Results of Redetermination Pursuant to Ct. Order, Consol. Ct. No. 12-00007, ECF No. 132 ("<u>First Redetermination</u>"), and Final Results of Redetermination Pursuant to Ct. Order, ECF No. 52 ("<u>Second Redetermination</u>").  Following the first remand determination, Court Numbers 12-00007 and 12-00013 were severed and final judgment entered. Order Granting Mot. to Sever, Consol. Ct. No. 12-00007, ECF No. 162; Judgment, Ct. No. 12-00007, ECF No. 163; Judgment, Ct. No. 12-00013, ECF No. 32. These were appealed by Defendant-Intervenor CAHP. Notice of Appeal, Ct. No. 12-00007, ECF No. 166; Notice of Appeal, Ct. No. 12-00013, ECF No. 33.  Defendant-Intervenor moved to voluntarily dismiss the appeal, without opposition.  The motion was granted. <u>Zhejiang Layo Wood Indus. Co. v. United States</u>, 576 F. App'x 1000 (Fed. Cir. 2014).

[8] Final Results of Redetermination Pursuant to Ct. Order, ECF No. 107 ("<u>Third Redetermination</u>").

Determination, having individually investigated three fully
cooperative mandatory respondents,[9] Commerce loosely followed
19 U.S.C. § 1673d(c)(5)(A) and took a simple average[10] of the two
non-*de minimis* mandatory respondent rates (resulting in a
separate rate of 3.31 percent). Final Determination, 76 Fed.
Reg. at 64,321-22.  Plaintiffs challenged the determination.
Compl., ECF No. 9 at ¶ 3.  It was ultimately remanded on other
grounds. Baroque Timber, ___ CIT ___, 925 F. Supp. 2d 1332.

---

[9] Commerce requested quantity and value ("Q&V") data from 190
companies and received timely responses from 80. Multilayered
Wood Flooring from the [PRC], 76 Fed. Reg. 30,656, 30,657 (Dep't
Commerce May 26, 2011) (preliminary determination of sales at
less than fair value) ("Preliminary Determination").  From
these, Commerce selected the three largest exporters (by volume)
to be mandatory respondents. Id. at 30,658; see 19 U.S.C.
§ 1677f-1(c)(2)(B).  The remaining exporters and producers were
invited to submit a separate-rate status application.  Commerce
received timely-filed responses from 74 companies, all of which
demonstrated eligibility for separate rate status (including the
Plaintiffs here). Final Determination, 76 Fed. Reg. at 64,321.
The 110 companies that did not respond to Commerce's Q&V
questionnaire were treated as part of the PRC-wide entity.
Preliminary Determination, 76 Fed. Reg. at 30,661-62 (unchanged
in Final Determination, 76 Fed. Reg. at 64,322).

[10] Commerce declined to use the weighted average indicated in
19 U.S.C. § 1673d(c)(5)(A) because doing so would have risked
disclosure of mandatory respondents' proprietary information.
Final Determination, 76 Fed. Reg. at 64,322.

In the First Redetermination, changes to the
underlying surrogate values and calculation methodology resulted
in all three mandatory respondents receiving AD duty rates of
zero. First Redetermination, Consol. Ct. No. 12-00007, ECF
No. 132, at 2, 52.  Because of this, Commerce recalculated the
separate rate under 19 U.S.C. § 1673d(c)(5)(B), and decided that
"any reasonable method" included a simple average of the three
zero mandatory rates and a rate based on adverse facts available
("AFA").[11]  This resulted in a higher separate rate of 6.41
percent. First Redetermination, Consol. Ct. No. 12-00007, ECF
No. 132, at 27.  The court found that this method, while not *per
se* unreasonable, was unsupported by substantial evidence,
because Commerce had failed to articulate a rational connection
between Plaintiffs' economic reality and the use of the AFA rate
in the calculation of their rate. Baroque Timber, ___ CIT ___,
971 F. Supp. 2d at 1344-45.  The court accordingly remanded to
Commerce for a redetermination of the separate rate. Id. at
1346.

---

[11] If Commerce finds that "an interested party has failed to
cooperate by not acting to the best of its ability to comply
with a request for information," then, in calculating that
party's AD duty rate, Commerce may "use an inference that is
adverse to the interests of that party in selecting from among
the facts otherwise available." 19 U.S.C. § 1677e(b).  When
Commerce "relies on secondary information [as facts otherwise
available] rather than on information obtained in the course of
an investigation or review," it must "to the extent practicable,
corroborate that information from [reasonably available]
independent sources." Id. at 1677e(c).

Between the second remand and the corresponding redetermination, Commerce issued the final determination in the first administrative review following the investigation at issue here. Final Review, 79 Fed. Reg. 26,712. Because of this, in the Second Redetermination, rather than recalculate the separate rate for all separate rate respondents, Commerce inferred that, because there were 110 non-cooperative respondents in the investigation, see Part IIA, *infra*, the appropriate separate rate for the investigation was more than *de minimis*. It then assigned seven of the Plaintiffs[12] the rate calculated for them in the first administrative review (as limited by the provisional measures deposit cap). Second Redetermination, ECF No. 52, at 6-8. The remaining eighth Plaintiff, Changzhou Hawd, having certified no shipments, did not have a calculated rate for the first review. Commerce concluded that it did not have enough data on the record to calculate a rate reflective of that company's economic reality and initiated an individual investigation of this eighth respondent. Id. at 8-9.[13]

---

[12] Fine Furniture (Shanghai), Ltd. ("Fine Furniture"); Dunhua City Jisen Wood Industry Co., Ltd; Dunhua City Dexin Wood Industry Co., Ltd; Dalian Huilong Wooden Products Co.; Kunshan Yingyi-Nature Wood Industry Co., Ltd.; Armstrong Wood Products (Kunshan) Co., Ltd. ("Armstrong"); and Karly Wood Product Ltd. Second Redetermination, ECF No. 52, at 1-2, 7-8.

[13] Changzhou Hawd subsequently filed a petition for a writ of mandamus to compel Commerce to refrain from the individual investigation. Pl. Changzhou Hawd Flooring Co., Ltd. Pet. for Writ of Mandamus, ECF No. 71. Commerce agreed to suspend the
(footnote continued)

        The Second Redetermination was challenged in extensive

briefing before the court,[14] and, at the court's suggestion,

see Telephone Conf., ECF No. 79, Commerce requested a partial

voluntary remand "to determine whether it should conduct a

limited investigation of the eight separate rate [P]laintiffs,"

rather than a full investigation of just Changzhou Hawd.

Mot. for Voluntary Remand, ECF No. 92 at 1 (quotation marks

omitted).  The court granted the voluntary remand. Changzhou

Hawd, __ CIT at __, 6 F. Supp. 3d at 1362.  It was ultimately a

futile exercise.  Commerce essentially decided that it was

impossible to take an approach that was both measured and fact-

---

deadlines for Changzhou Hawd's individual investigation, Letter
from Commerce to Ct., ECF No. 82, and the court accordingly
denied the petition as moot. Changzhou Hawd Flooring Co. v.
United States, __ CIT __, 6 F. Supp. 3d 1358, 1360 n.9 (2014).

[14] See Comments of Certain Separate Rate Appellants to Second
Remand Redetermination, ECF No. 69 ("Pls. Comments"); Comments
of Def.-Intervenor Re Dep't of Commerce Final Results of
Redetermination Pursuant to Remand, ECF No. 73; Comments of Fine
Furniture (Shanghai) Ltd. on Dep't of Commerce May 30, 2014
Final Results of Redetermination Pursuant to Ct. Order, ECF No.
74 ("Fine Furniture Comments"); Comments in Opp'n to Dep't of
Commerce May 29, 2014 Final Results of Redetermination Pursuant
to Ct. Remand, ECF No. 75 ("Armstrong Comments"); Resp. of
Lumber Liquidators Services, LLC in Opp'n to U.S. 2d Remand
Redetermination, ECF No. 76 ("Lumber Liquidators Comments");
Reply to Comments of Def.-Intervenor Re Dep't of Commerce Final
Results of Redetermination Pursuant to Remand, ECF No. 89; Reply
Comments of Lumber Liquidators Services, LLC in Opp'n to the
U.S. 2d Remand Redetermination, ECF No. 90; Reply Comments of
Fine Furniture (Shanghai) Ltd. on Dep't of Commerce May 30, 2014
Final Results of Redetermination Pursuant to Ct. Order, ECF No.
91; Reply Comments of Def.-Intervenor Re Dep't of Commerce Final
Results of Redetermination Pursuant to Remand, ECF No. 93.

based, and reaffirmed its results and reasoning in the Second
Redetermination. See Third Redetermination, ECF No. 107, at 17.

## STANDARD OF REVIEW

The court will sustain Commerce's determinations
unless they are "unsupported by substantial evidence on the
record, or otherwise not in accordance with law." 19 U.S.C.
§ 1516a(b)(1)(B)(i).  The court will set aside agency actions
found to be arbitrary and capricious. Changzhou Wujin Fine Chem.
Factory Co., Ltd. v. United States, 701 F.3d 1367, 1377 (Fed.
Cir. 2012) (citing Bowman Transp., Inc. v. Arkansas-Best Freight
Sys., Inc., 419 U.S. 281, 284 (1974)).

## DISCUSSION

I.   Commerce's Methodology

Commerce generally follows 19 U.S.C § 1673d(c)(5) to
establish the separate rate. Second Redetermination, ECF No. 52,
at 3; Yangzhou Bestpak Gifts & Crafts Co. v. United States,
716 F.3d 1370, 1374 (2013).  Thereunder, the general rule sets
the separate rate as equal "to the weighted average of the
estimated weighted average dumping margins established for
exporters and producers individually investigated, excluding any
zero and de minimis margins, and any margins [based entirely on
facts otherwise available]." 19 U.S.C. § 1673d(c)(5)(A).  The
exception to this rule, which applies only when all individually
investigated rates are zero, de minimis, or based entirely on
facts otherwise available, allows Commerce to use "any

reasonable method to establish the estimated [separate rate] for exporters and producers not individually investigated." Id. at § 1673d(c)(5)(B).  "Any reasonable method" is expected to mean the average of the rates calculated for individually investigated respondents. 19 U.S.C. § 1673d(c)(5)(B); Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"), HR. Doc. No. 103-316 (1994) at 873, reprinted in 1994 U.S.C.C.A.N. 4040, 4201.[15]  However, "if [the expected] method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods." SAA at 873, reprinted in 1994 U.S.C.C.A.N. at 4201.

Here, all three individually investigated respondents had AD duty rates of zero. Second Redetermination, ECF No. 52, at 3.  Commerce accordingly established the separate rate under the exception — using "any reasonable method" — rather than the rule. Id.; 19 U.S.C. § 1673d(c)(5)(B).  Commerce elected not to use the expected method, or even to calculate a specific separate rate for the investigation.  Rather, the agency went no further than inferring that the separate rate, on the record evidence, must be more than de minimis. Second Redetermination,

---

[15] The SAA is recognized by Congress as an authoritative expression concerning the interpretation and application of the Tariff Act of 1930. 19 U.S.C. § 3512(d).

ECF No. 52, at 4-7.  Plaintiffs argue that this is not in
accordance with law, contending Commerce must calculate a *de
minimis* separate rate for the investigation.[16]

The AD statute does not speak directly to the question
at issue;[17] it only requires "any reasonable method to establish"
the separate rate. See 19 U.S.C. § 1673d(c)(5)(B).  "Any
reasonable method" is a "lenient standard," Bestpak, 716 F.3d at
1378, and "establish" is a broader term than "calculate."  The
court must "leave the discretion provided by the ambiguities of
[the AD] statute with the implementing agency," Fine Furniture
(Shanghai) Ltd. v. United States, 748 F.3d 1365, 1369 (Fed. Cir.
2014) (quoting United States v. Eurodif S.A., 555 U.S. 305, 316
(2009)), even where "the court might have preferred" a different
interpretation, Koyo Seiko, 36 F.3d at 1570 (citation omitted).
The broad language of the statute allows Commerce to tailor its

---

[16] Pls. Comments, ECF No. 69, at 4-7, 10-13; Armstrong Comments,
ECF No. 75, at 4-8; Lumber Liquidators Comments, ECF No. 76,
at 3.

[17] Commerce's methodology must be in accordance with law. See
19 U.S.C. § 1516a(b)(1)(B)(i).  If the statue speaks clearly "to
the precise question at issue," then it defines agency action;
"[i]f the statute does not clearly answer the relevant question,
then the court must . . . decide whether the agency's
interpretation amounts to a reasonable construction of the
statute." Bestpak, 716 F.3d at 1377 (citing Chevron, U.S.A.,
Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43
(1984)).  Commerce's interpretation "need not be the only
reasonable interpretation" nor the "most reasonable." Koyo Seiko
Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994)
(original emphasis omitted) (citing Zenith Radio Corp. v. United
States, 437 U.S. 443, 450 (1978)).

method to the record evidence before it. See Eurodif, 555 U.S. at 317-18 ("[In reading regulatory statutes] form should be disregarded for substance and the emphasis should be on economic reality." (quotation marks and citation omitted)).

Here, Commerce's decision to infer a more than *de minimis* but otherwise unspecified separate rate for the investigation, using instead the cash deposit rates from the first administrative review, as limited by the provisional measures deposit cap, is within a reasonable construction of the statute.[18]  That "any reasonable method" is available to Commerce, not just the expected method, indicates the statute contemplates the possibility of a more than *de minimis* separate rate even where, as here, all individually investigated rates are zero. See 19 U.S.C. § 1673d(c)(5)(B).  Further, while in most circumstances Commerce would need a specific separate rate for the investigation, so that an AD duty can be assessed (or not) with publication of an AD duty order, see 19 U.S.C. § 1673e, that is not the case here.  Because Commerce has already

---

[18] Contrary to Plaintiffs' arguments, see Lumber Liquidators Comments, ECF No. 76, at 1-2, this result is not barred by Baroque Timber, __ CIT __, 971 F. Supp. 2d 1333.  While a redetermination must "compl[y] with the court's remand order," Amanda Foods (Vietnam) Ltd. v. United States, __ CIT __, 837 F. Supp. 2d 1338, 1343 (2012) (quotation marks and citation omitted), the court only remanded "for further consideration." Baroque Timber, __ CIT at __, 971 F. Supp. 2d at 1346. It did not establish parameters or requirements other than that Commerce be reasonable.

calculated rates for some Plaintiffs from the first

administrative review (based on their actual sales experience,

not the assortment other companies' *de minimis* and AFA rates

otherwise available in this investigation), and these rates will

apply to the period at issue regardless, <u>see</u> 19 U.S.C.

§ 1675(a)(2)(C)), Commerce has established rates "reasonably

reflective of potential dumping margins" for the separate rate

respondents. <u>See</u> SAA at 873, <u>reprinted in</u> 1994 U.S.C.C.A.N. at

4201.  Accordingly, Commerce's method is not *per se*

unreasonable.


II.  <u>Commerce's Methodology in the Context of the Record</u>

    A. *Commerce's Inference that the Separate Rate is More Than*
       De Minimis

       In the investigation, 110 companies did not respond to

Commerce's Q&V questionnaire. <u>Second Redetermination</u>, ECF

No. 52, at 4.  Commerce assumes that, when a company so

completely fails to participate, it has made "a knowing and

rational decision" not to respond "based on which choice will

result in the lower rate." <u>Id.</u> at 5 (citations omitted).

Commerce is permitted to make this assumption, <u>see</u> <u>Ta Chen</u>

<u>Stainless Steel Pipe, Inc. v. United States</u>, 298 F.3d 1330, 1339

(Fed. Cir. 2002) (citing <u>Rhone Poulenc, Inc. v. United States</u>,

899 F.2d 1185, 1190 (Fed. Cir. 1990)),[19] and Plaintiffs have not

---

[19] <u>See</u> <u>Tianjin Mach. Imp. & Exp. Corp. v. United States</u>,
__ CIT __, 752 F. Supp. 2d 1336, 1347 (2011) ("In other words,
                                     (footnote continued)

offered evidence sufficient to suggest that Commerce is wrong in

doing so here.[20]

This rational actor assumption is the core of the

well-worn presumption that allows Commerce to use AFA against

non-cooperating respondents, see 19 U.S.C. § 1677e(b), thereby

shifting the burden of production[21] and incentivizing future

cooperation.[22]  Similar but distinct, this same rational actor

---

[Rhone Poulenc] stands for the proposition that a respondent can
be assumed to make a rational decision to either respond or not
respond to Commerce's questionnaires, based on which choice will
result in the lower rate.").

[20] Instead, Plaintiffs only provide alternative speculation. See,
e.g., Pls. Comments, ECF No. 69 at 13-15; Fine Furniture
Comments, ECF No. 74, at 6.

[21] A presumption is "a rule of law, statutory or judicial, by
which finding of a basic fact gives rise to existence of
presumed fact, until presumption is rebutted." Wilner v. United
States, 24 F.3d 1397, 1411 (Fed. Cir. 1994) (quoting Black's Law
Dictionary 1185 (6th ed. 1990)).  It serves "to allocate the
burden of production," Universal Elecs. Inc. v. United States,
112 F.3d 488, 492 n.2 (Fed. Cir. 1997), ideally compelling the
party against whom the presumption operates to produce the
necessary evidence, A.C. Aukerman Co. v. R.L. Chaides Constr.
Co., 960 F.2d 1020, 1037 (Fed. Cir. 1992).  "Because Commerce
lacks subpoena power, Commerce's ability to apply [the AFA
presumption] is an important one." Essar Steel Ltd. v. United
States, 678 F.3d 1268, 1276 (Fed. Cir. 2012) (citation omitted).

[22] See KYD, Inc. v. United States, 607 F.3d 760, 767 (Fed. Cir.
2010) ("[A]n antidumping rate based on AFA is designed to
provide respondents with an incentive to cooperate [. . .]."
(internal quotation marks and citation omitted)); SAA at 870,
reprinted in 1994 U.S.C.C.A.N. at 4199 (explaining that the
purpose of the AFA presumption is to encourage future
cooperation by "ensur[ing] that the party does not obtain a more
favorable result by failing to cooperate than if it had
cooperated fully"). Cf. Mueller Comercial de Mexico, S. de R.L.
de C.V. v. United States, 753 F.3d 1227, 1234-35 (Fed. Cir.
2014) (holding that Commerce "must carry out a case-specific
(footnote continued)

assumption allows Commerce to infer[23] from companies'
non-cooperation that "[their] dumping margins during the period
of investigation were not zero or *de minimis*, and that, if
[Commerce] had received complete information, [it] may have
chosen one of these companies as a mandatory respondent." Second
Redetermination, ECF No. 52, at 4 (footnote omitted).  That is,
the 110 non-cooperating respondents would have participated if
their rates were zero or *de minimis*, and the gap in the
evidentiary record their non-cooperation creates reflects on the
separate rate respondents only insofar as it conceals data that

---

analysis of the applicability of deterrence and similar
policies," such that the AFA rationale may only be used against
a cooperating party where it has the power to "potentially
induce" non-cooperating parties to provide requested evidence)
(citation omitted); Fine Furniture, 748 F.3d at 1372-73 ("[A]n
adverse inference imposed due to [one party's] failure to
cooperate that collaterally impacts [another party is] proper"
because it "has the potential to encourage cooperation from [the
first party], or it would at least encourage importers not to
deal with [that party] and other non-cooperating
exporters."(citing KYD, 607 F.3d at 768)).

[23] See A.C. Aukerman Co., 960 F.2d at 1037 ("A factual conclusion
reached by inference is based on a process of reasoning and
experience.  A presumption, however, is a method of dealing with
proof, normally to give it a greater effect than it would have
if it were handled solely by the inferential process.")
(alteration, quotation marks and citation omitted); Changzhou
Wujin Fine Chem. Factory Co. v. United States, __ CIT __, 942
F. Supp. 2d 1333, 1340 (2013) ("[F]ailing to cooperate in an
antidumping investigation gives Commerce the discretion to draw
certain inferences about the uncooperative respondent's pricing
practices. [. . .]  This, though, is separate and distinct from
an adverse inference in which Commerce selects a rate
sufficiently adverse to deter noncompliance." (citations
omitted)).

would have applied in the calculation of the separate rate. Where, as here, all individually investigated respondents have received a zero rate (or *de minimis* rate, or AFA rate), this gap is effectively dispositive: "if the 110 companies had chosen to cooperate," and one had been selected as a mandatory respondent, "the examined company's rate would have been above *de minimis*" but below AFA, and, pursuant to 19 U.S.C. § 1673d(c)(5)(A), "would have been assigned to the separate rate plaintiffs as [the] separate rate in the Final Determination." See Second Redetermination, ECF No. 52, at 6.

Commerce corroborates its inference of a more than *de minimis* separate rate for the investigation with citation to the results of the first administrative review. Second Redetermination, ECF No. 52, at 7, 30. There, Commerce individually investigated three respondents, including Plaintiffs Fine Furniture and Armstrong, and ultimately found a more than *de minimis* rate for Fine Furniture and a zero rate for Armstrong.[24] Commerce views this as confirmation that dumping

---

[24] In the preliminary results, Commerce found dumping margins of 0.00, 0.67, 8.85, and 8.87 percent for individually investigated respondents Nanjing Minglin Wooden Industry Co. Ltd. ("Minglin"), Fine Furniture, Zhejiang Layo Wood Industry Co., Ltd. ("Layo Wood"), and Armstrong, respectively. Preliminary Review, 78 Fed. Reg. at 70,268. In the Final Review, Commerce found dumping margins of 0.00, 5.74, and 0.00 for Minglin, Fine Furniture, and Armstrong, respectively (Layo Wood was excluded because of its zero rate in the investigation on remand). 79 Fed. Reg. at 26,714. Fine Furniture's rate became the separate rate (as the only individually investigated non-*de minimis*, non-
(footnote continued)

occurred during the period of investigation: if dumping occurred

during the review, under the discipline of an AD order, it is

likely to have also occurred here, without the discipline of an

AD order to disincentivize such pricing behavior.[25]  While it is

true that "each administrative review is a separate segment of

proceedings with its own unique facts," Peer Bearing Co.-

Changshan v. United States, 32 CIT 1307, 1310, 587 F. Supp. 2d

1319, 1325 (2008)(quotation marks and citation omitted), and

that Commerce cannot consider AD duty rates from other reviews

when those rates bear "no rational relationship to any pricing

behavior during the [period of review] or to the likely pricing

behavior of the recipients of the margin," Albemarle Corp. v.

United States, __ CIT __, 931 F. Supp. 2d 1280, 1292 (2013),[26]

this does not undermine Commerce's determination here.  Commerce

---

AFA rate). Id.  The final results were subsequently amended, to
correct a ministerial error, changing Fine Furniture's rate to
5.92 percent (with the separate rate revised accordingly).
Amended Final Review, 79 Fed. Reg. at 35,315-16.

[25] Second Redetermination, ECF No. 52, at 30. This distinguishes
the instant case from Amanda Foods (Vietnam) Ltd. v. United
States, where the court held that it was unreasonable to use in
the first review, where there was an AD discipline, rates from
the investigation, where there was no AD discipline, because
there was evidence on the record that plaintiffs had "changed
their pricing behavior so as to comply with the [AD] order." 33
CIT 1407, 1418-21, 647 F. Supp. 2d 1368, 1380-82 (2009).

[26] Cf. Pls. Comments, ECF No. 69, at 31-32; Fine Furniture
Comments, ECF No. 74, at 13-15; Armstrong Comments, ECF No. 75,
at 15-16; Lumber Liquidators Comments, ECF No. 76 at 9; see also
Final Review, 79 Fed. Reg. at 26,712, 26,714-15; 19 U.S.C. §
1673d(c)(5)(A).

references the first review results as corroboration, not for
calculation.  The first review serves to confirm that the
separate rate respondents' economic reality is more varied and
complicated than the mandatory respondent *de minimis* rates here
suggest.  It confirms that the separate rate respondents merit
the closer consideration that keeping them subject to the order
affords, some receiving *de minimis* rates and others not.  The
individually investigated rates for two Plaintiffs, one of
which, as the only non-*de minimis* rate, defines the separate
rate for five other of the Plaintiffs, bear a rational
relationship to the pricing behavior of the recipients of the
margin.  As the rates at which the entries at issue will be
liquidated (as limited by the provisional measures deposit cap),
they are also reasonably related to the time period at issue.

Because "the question here is whether the evidence and
reasonable inferences from the record support [Commerce's]
finding," Matsushita Electric Indus. Co. v. United States,
750 F.2d 927, 933 (Fed. Cir. 1984), "not whether some other
inference could reasonably have been drawn," Daewoo Elecs. Co.
v. Int'l Union of Elec., Elec., Technical, Salaried & Mach.
Workers, AFL-CIO, 6 F.3d 1511, 1520 (Fed. Cir. 1993), Commerce's
determination holds.  Commerce's conclusion that — based on the
silence of 110 respondents, the resultant gap in the record, and
the mixed results of the first administrative review — the
separate rate (and thus Plaintiffs' rate) in this investigation

is somewhat more than *de minimis* and less than AFA, while not

the only possible inference, is a reasonable inference from the

record, and therefore supported by substantial evidence. See

Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

*B. Commerce's Refusal to Calculate a Specific Separate Rate*

     Having reasonably inferred that the separate rate for

the period of investigation is more than *de minimis*, Commerce

declined to calculate a specific (higher than *de minimis*) rate

for seven of the eight Plaintiffs. Second Redetermination, ECF

No. 52, at 7.  The agency concluded that "[w]hile it is normally

necessary to assign a specific rate to separate rate respondents

. . . in this instance, it would be an unnecessary use of

administrative and judicial resources" because specific rates

would be without consequence and without use. Id. at 7-8.

     Commerce is correct that further precision would be

without consequence.  In an AD investigation, Commerce

calculates dumping margins for respondents and imposes an AD

order based on those margins. Union Steel v. United States,

713 F.3d 1101, 1103 (Fed. Cir. 2013) (citing 19 U.S.C. §§ 1673a,

1673b(b), 1673b(d), 1673d(a), 1673d(c)).  Respondents with *de*

*minimis* or zero margins are excluded from the order (and

therefore subsequent administrative reviews). See 19 U.S.C.

§§ 1673b(b)(3), 1673d(a)(4).  This exclusion is not premised on

a specific rate, but rather whether the rate is *de minimis* or

not.  Having reasonably inferred that the separate rate is more

than *de minimis*, Commerce has made the determination necessary
to impose the AD order on Plaintiffs.

Commerce is also correct that a specific rate for the
seven Plaintiffs would be without use.  This is because "the
rate[s] determined in the first administrative review
supersede[] the cash deposit rate established in the final
determination of the investigation." Second Redetermination, ECF
No. 52, at 7 (citing 19 U.S.C. § 1675(a)(2)(C)).  Plaintiffs'
entries would have been and will be liquidated at the rates
established in the first administrative review (as limited by
the provisional measures deposit cap)[27] regardless of whatever
non-*de minimis* rate might be assigned to them in the
investigation.

Further, contrary to Plaintiffs' arguments,[28] any rate
calculated pursuant to this litigation would not affect the
provisional measures deposit cap.  The provisional measures
deposit cap ensures that, for the interstitial period of the

---

[27] Plaintiffs suggest that this frustrates the Bestpak
requirement that their rate be based on their economic reality,
see Armstong Comments, ECF No. 75, at 14-15, that their rate
bear "some relationship to their actual dumping margins."
Bestpak, 716 F.3d at 1380.  However, as the more than *de minimis*
rate is corroborated by Plaintiffs' subsequent individually
investigated or calculated rates, and those rates will
ultimately apply to the entries at issue, see Final Review, 79
Fed. Reg. at 26,714-15; 19 U.S.C. §§ 1675(a)(2)(C),
1673d(c)(5)(A), Bestpak is satisfied.

[28] See Pls. Comments, ECF No. 69, at 6-7.

investigation — after the preliminary determination but prior to the issuance of an AD order — importers are not liable for more than the rate set for them at the time of entry. 19 U.S.C. § 1673f(a); 19 C.F.R. § 351.212(d) (2014).  If the AD duty rate set in the first administrative review (or subsequent litigation) is less, the difference between it and the cash deposit, bond, or other security provided at entry, is refunded. If the AD duty rate is ultimately more, then the difference is not owed. Thai Pineapple Canning Indus. Corp. v. United States, 273 F.3d 1077, 1086 (Fed. Cir. 2001).  Because the cap "limits the rate based on the deposited amount, not an amount that a final determination indicates should have been deposited," Universal Polybag Co. v. United States, 32 CIT 904, 925, 577 F. Supp. 2d 1284, 1303 (2008), this action and its results do not affect the cap.  Rather, the cap is set by the amount collected, "[not] the amount that should have been collected." Id., 32 CIT at 925, 577 F. Supp. 2d at 1303-04; accord Yantai Oriental Juice Co. v. United States, 26 CIT 605, 623 (2002) (not reported in the Federal Supplement) ("[The cap] merely directs how the deposit rate should be used, not how it should be calculated.").

Accordingly, as a specific rate for the seven Plaintiffs would be without use and without effect, in the

interest of administrative and judicial economy,[29] it was

reasonable for Commerce to decline to calculate a more specific

rate for this investigation.

   C. *Commerce's Decision to Individually Investigate*
      *Changzhou Hawd*

        Having inferred that the separate rate for the

investigation is more than *de minimis*, but declining to

calculate a specific separate rate in favor of rates from the

first administrative review, Commerce determined it was

necessary to conduct an individual investigation of the one

Plaintiff that did not receive a rate in the first

administrative review, Changzhou Hawd.  Changzhou Hawd has

certified no shipments of subject merchandise for the period of

the first administrative review, and therefore has no calculated

rate for that period. Final Review, 79 Fed. Reg. at 26,713.

Commerce believes that "with the very limited information

currently on the record, [it] is unable to calculate a dumping

rate based on Changzhou Hawd's own economic reality" without a

full individual investigation. Second Redetermination, ECF No.

52, at 8-9; see also Third Redetermination, ECF No. 107, at 17

(concluding that anything short of a full investigation would

---

[29] See USCIT R. 1; Union Camp Corp. v. United States, 23 CIT 264,
280, 53 F. Supp. 2d 1310, 1325 (1999).

not be practically or legally feasible).  Plaintiffs challenge
this determination as arbitrary and capricious.[30]

While the decision to reopen the record is generally
within the agency's discretion, see Essar Steel, 678 F.3d
at 1277-78, that discretion cannot be exercised in a manner that
is arbitrary and capricious. See Changzhou Wujin Fine Chem.,
701 F.3d at 1377 (citing Bowman Transp., 419 U.S. at 284).
Arbitrary and capricious is a "narrow" standard of review, but
still "searching and careful." Citizens to Pres. Overton Park,
Inc. v. Volpe, 401 U.S. 402, 416 (1971).  Commerce must
"articulate a rational connection between the facts found and
the choice made." Bowman, 419 U.S. at 285 (quotation marks and
citation omitted).  The agency's decision cannot have "relied on
factors [that] Congress has not intended it to consider,
entirely failed to consider an important aspect of the problem,
offered an explanation for its decision that runs counter to the
evidence before [it], or [be] so implausible that it could not
be ascribed to a difference in view or the product of agency
expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State
Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Here, Commerce has decided to conduct an individual
investigation of a single separate rate respondent in the third

---

[30] See Pls. Comments, ECF No. 69, at 33-36; Lumber Liquidators
Comments, ECF No. 76, at 5-7.

iteration of a much-contested AD determination. Second Redetermination, ECF No. 52, at 8-9, 36-37.  This, despite Commerce's emphatic claims of limited administrative resources. Final Determination I & D Mem., cmt. 43 at 110 ("[T]he Department lack[s] the resources required to examine more than three respondents in this investigation."); Second Redetermination, ECF No. 52, at 7-8 (declining to calculate a specific separate rate because of "limited administrative resources").  Moreover, Commerce has repeatedly declined to conduct an individual investigation of another Plaintiff in this investigation, would-be voluntary respondent Fine Furniture, citing lack of resources.[31] Final Determination I & D Mem., cmt. 43 at 110-112; First Redetermination, Consol. Ct. No. 12-00007, ECF No. 132, at 49; Second Redetermination, ECF No. 52, at 37-40; Third Redetermination, ECF No. 107, at 10-11.

     Commerce cannot have it both ways.  It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." SKF USA Inc. v. United States, 263 F.3d

_____

[31] Commerce received multiple voluntary respondent requests in this investigation, all of which it denied. Preliminary Determination, 76 Fed. Reg. at 30,658 (noting voluntary respondent requests from Fine Furniture, Armstrong, Shanghai Lizhong Wood Products Co., Ltd., and Dun Hua City Jisen Wood Co., Ltd.); Final Determination I & D Mem., cmt. 43 at 110 (declining to individually investigate more than the three mandatory respondents).

1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted).  An agency "must cogently explain why it has exercised its discretion in a given manner." State Farm, 463 U.S. at 48 (citations omitted).  Internal inconsistency and self-contradiction do not satisfy this requirement.

Commerce asserts that because the current record has only "very limited information" on Changzhou Hawd (specifically, only "aggregate [Q&V] data and Changzhou Hawd's separate rate application"), Commerce "is unable to calculate a dumping rate based on Changzhou Hawd's own economic reality" without a full investigation. Second Redetermination, ECF No. 52, at 9.  While Commerce is correct that a separate rate respondent's AD duty rate must be reasonably related to its economic reality, Bestpak, 716 F.3d at 1380, that cannot reasonably be said to necessitate a full individual investigation in every instance. If Commerce can, indeed must, tie an AFA rate to the recipient's actual dumping margin,[32] where, by definition, Commerce cannot conduct a meaningful, let alone full, investigation to establish a rate,[33] it cannot be impossible to do the same for a fully cooperative separate rate respondent with the record evidence

---

[32] Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1325 (Fed. Cir. 2010).

[33] See 19 U.S.C. § 1677e(b) (allowing application of AFA only when an interested party has "failed to cooperate by not acting to the best of its ability to comply with a request for information").

present here and Commerce's continued ability to reasonably reopen the record.[34] Cf. Amanda Foods (Vietnam) Ltd. v. United States, __ CIT __, 774 F. Supp. 2d 1286 (2011).

Commerce also believes that it is statutorily impossible for it to do anything less than a full investigation. Third Redetermination, ECF No. 107, at 8-9, 17. But this does not comport with the plain language of the applicable statute. Commerce is only obliged to use "any reasonable method" to calculate a separate rate. 19 U.S.C. § 1673d(c)(5)(B). Commerce's internally inconsistent rationalization is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." State Farm, 463 U.S. at 43.

Commerce now has both an investigation and first administrative review, each with three fully cooperative individually investigated respondents. Second Redetermination, ECF No. 52, at 3-4; Final Review, 79 Fed. Reg. at 26,713. It has denied multiple voluntary respondent applications, Preliminary Determination, 76 Fed. Reg. at 30,658; Final Determination I & D Mem., cmt. 43 at 110, but still has an

---

[34] See Bestpak, 716 F.3d at 1380 ("Even with determinations of an AFA-rate, Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin. Likewise, rate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins.") (citing Gallant Ocean, 602 F.3d at 1323).

evidentiary record much more robust than would be available in a typical investigation.  In this context, while Commerce retains the discretion to reasonably reopen the record, its decision to conduct a full individual investigation of Changzhou Hawd at such a late date is arbitrary and capricious.

### CONCLUSION

While it is reasonable on this record for Commerce to infer that the separate rate is more than *de minimis*, and to decline to calculate a specific rate in favor of those already calculated for the first administrative review, it is arbitrary and capricious for Commerce to now launch an individual investigation of Changzhou Hawd.

Accordingly, this matter is affirmed in part and remanded in part to Commerce for further consideration in accordance with this opinion.  Commerce shall have until March 24, 2015 to complete and file its remand redetermination. Plaintiffs shall have until April 7, 2015 to file comments. Defendant and Defendant-Intervenor shall have until April 17, 2015 to file any reply.

IT IS SO ORDERED.

/s/Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: January 23, 2015
       New York, NY