Slip Op. 15 - 71

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CHANGZHOU HAWD FLOORING CO., LTD., *et al.*,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>UNITED STATES,<br><br>                    Defendant. | Before: Donald C. Pogue,<br>                    Senior Judge<br><br>Court No. 12-00020 |

OPINION

[remand redetermination affirmed]

Dated: July 6, 2015

          Gregory S. Menegaz and J. Kevin Horgan, deKieffer & Horgan, PLLC, of Washington, DC, for the Plaintiff, Changzhou Hawd Flooring Co., Ltd.

          Alexander V. Sverdlov, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director.  Of counsel was Shana Hofstetter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

          **Pogue, Senior Judge:** This action is again before the

court following a fourth remand and redetermination.[1]  The only

---

[1] The court has jurisdiction pursuant to § 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012) and 28 U.S.C. § 1581(c) (2012) (all
                                        (footnote continued)

issue remaining for review is the antidumping ("AD") duty rate

assigned to one separate rate respondent – Changzhou Hawd

Flooring Co., Ltd., ("Changzhou Hawd" or "Plaintiff").[2]

     Previously, in the second and partial third

redeterminations, the Department of Commerce ("Commerce") had,

belatedly, sought to individually investigate Changzhou Hawd.[3]

However, this decision was challenged as[4] and found to be

---

further citations to the Tariff Act of 1930, as amended, are to
Title 19 of the U.S. Code, 2012 edition).

[2] This action was previously consolidated with Court Numbers 11-
00452, 12-00007, and 12-00013, under Consolidated Court Number
12-00007. Order, May 31, 2012, Consol. Ct. No. 12-00007, ECF No.
37.  Court Number 11-00452 was ultimately severed and dismissed.
Am. Order Nov. 27, 2012, Consol. Ct. No. 12-00007, ECF No. 75;
Judgment, Ct. No. 11-00452, ECF No. 68; see Baroque Timber
Indus. (Zhongshan) Co. v. United States, __ CIT __, 853 F. Supp.
2d 1290 (2012); Baroque Timber Indus. (Zhongshan) Co. v. United
States, __ CIT __, 865 F. Supp. 2d 1300 (2012).  Following the
first redetermination, Final Results of Redetermination Pursuant
to Ct. Order, Consol. Ct. No. 12-00007, ECF No. 132 ("First
Redetermination"), Court Numbers 12-00007 and 12-00013 were
severed and final judgment entered. Order Granting Mot. to
Sever, Consol. Ct. No. 12-00007, ECF No. 162; Judgment, Ct. No.
12-00007, ECF No. 163; Judgment, Ct. No. 12-00013, ECF No. 32.
These were appealed by Defendant-Intervenor (the Coalition for
American Hardwood Parity). Notice of Appeal, Ct. No. 12-00007,
ECF No. 166; Notice of Appeal, Ct. No. 12-00013, ECF No. 33.
Defendant-Intervenor moved to voluntarily dismiss the appeal,
without opposition.  The motion was granted. Zhejiang Layo Wood
Indus. Co. v. United States, 576 F. App'x 1000 (Fed. Cir. 2014).

[3] Final Results of Redetermination Pursuant to Ct. Order, ECF
No. 52 ("Second Redetermination"), at 8-9; Final Results of
Redetermination Pursuant to Ct. Order, ECF No. 107 ("Third
Redetermination"), at 16-17.

[4] See Comments of Certain Separate Rate Appellants to 2d Remand
Redetermination, ECF No. 69 ("Pls.' Comments on Second
Redetermination"), at 33-36.

arbitrary and capricious. <u>Changzhou Hawd Flooring Co. v. United
States</u>, __ CIT __, 44 F. Supp. 3d 1376, 1388-90 (2015).  On
remand, Commerce determined that the separate rate, and
therefore Changzhou Hawd's rate, was more than *de minimis*.
Rather than then calculate a rate for Changzhou Hawd, however,
Commerce decided to continue applying the company's current cash
deposit rate, as established in the original final
determination,[5] pending the final results of the Second
Administrative Review, where Changzhou Hawd is again a separate
rate respondent.[6] Final Results of Redetermination Pursuant to
Ct. Order, ECF No. 130 ("<u>Fourth Redetermination</u>").  Plaintiff
challenges this determination as not in accordance with law, not
supported by substantial evidence, and not compliant with the
court's previous remand order.[7]

    Because Commerce's decision is based on a reasonable
reading of the law and of the evidentiary record, satisfying the

---

[5] <u>Multilayered Wood Flooring from the People's Republic of China
[("PRC")]</u>, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011)
(final determination of sales at less than fair value) ("<u>Inv.
Final Determination</u>"); <u>Multilayered Wood Flooring from the
[PRC]</u>, 76 Fed. Reg. 76,690, 76,691-92 (Dep't Commerce Dec. 8,
2011) (amended final determination of sales at less than fair
value and antidumping duty order) ("<u>Inv. Amended Final
Determination</u>").

[6] <u>See</u> <u>Multilayer Wood Flooring from the [PRC]</u>, 80 Fed. Reg. 1388
(Dep't Commerce Jan. 9, 2015) (preliminary results of AD duty
administrative review; 2012-2013) ("<u>AR2 Prelim. Determination</u>")

[7] Comments of Changzhou Hawd Flooring Co., Ltd. in Opp'n to 4th
Remand Redetermination, ECF No. 132 ("<u>Pl.'s Br.</u>").

court's previous remand instructions, the determination is
affirmed.

BACKGROUND

        Previous litigation of the separate rate in this
investigation has produced two court opinions[8] and two
corresponding redeterminations by Commerce,[9] a voluntary remand
and redetermination,[10] a third court opinion,[11] and now a fourth
redetermination by Commerce.[12]  While the court presumes
familiarity with the progression of this case, the immediately
pertinent facts are summarized below.

        In the second and supplementing partial third
redeterminations, Commerce inferred that, because there were 110
non-cooperative respondents in the investigation, the separate
rate was more than *de minimis*. Second Redetermination, ECF
No. 52, at 3-7.  Commerce, however, declined to calculate a
specific separate rate. Id. at 7-8.  Instead, the agency

---

[8] Baroque Timber Indus. (Zhongshan) Co. v. United States, ___ CIT
___, 925 F. Supp. 2d 1332 (2013); Baroque Timber Indus.
(Zhongshan) Co. v. United States, __ CIT __, 971 F. Supp. 2d
1333 (2014)

[9] First Redetermination, Consol. Ct. No. 12-00007, ECF No. 132;
Second Redetermination, ECF No. 52.

[10] Third Redetermination, ECF No. 107.

[11] Changzhou Hawd, __ CIT __, 44 F. Supp. 3d 1376.

[12] Fourth Redetermination, ECF No. 130.

assigned seven of the Plaintiffs[13] the rate calculated for them
in the First Administrative Review (which had already, by that
time, been completed),[14] as limited by the provisional measures
deposit cap.[15] Id.  Changzhou Hawd, however, did not have a rate
from the First Administrative Review.[16]  Commerce, concluding
that it did not have enough data on the record to calculate a
rate reflective of Changzhou Hawd's economic reality, belatedly
initiated an individual investigation of the company. Id. at

---

[13] Fine Furniture (Shanghai), Ltd. ("Fine Furniture"); Dunhua
City Jisen Wood Industry Co., Ltd; Dunhua City Dexin Wood
Industry Co., Ltd; Dalian Huilong Wooden Products Co.; Kunshan
Yingyi-Nature Wood Industry Co., Ltd.; Armstrong Wood Products
(Kunshan) Co., Ltd. ("Armstrong"); and Karly Wood Product Ltd.
Second Redetermination, ECF No. 52, at 1-2, 7-8.

[14] See Multilayered Wood Flooring from the [PRC], 79 Fed. Reg.
26,712, 26,713, (Dep't Commerce May 9, 2014) (final results of
antidumping duty administrative review; 2011-2012) ("AR1 Final
Determination").

[15] The provision measures deposit cap "ensures that, for the
interstitial period of the investigation — after the preliminary
determination but prior to the issuance of an AD order —
importers are not liable for more than the rate set for them at
the time of entry." Changzhou Hawd, 44 F. Supp. 3d at 1388
(citing 19 U.S.C. § 1673f(a); 19 C.F.R. § 351.212(d)(2014)).
This means that "[i]f the AD duty rate set in the first
administrative review (or subsequent litigation) is less, the
difference between it and the cash deposit, bond, or other
security provided at entry, is refunded.  If the AD duty rate is
ultimately more, then the difference is not owed." Id. (citing
Thai Pineapple Canning Indus. Corp. v. United States, 273 F.3d
1077, 1086 (Fed. Cir. 2001)).

[16] Changzhou Hawd was found to have no shipments for the period
of the first administrative review. AR1 Final Determination, 79
Fed. Reg. at 26,713.

8-9; Third Redetermination, ECF No. 107.[17]  While the court
affirmed as reasonable Commerce's inference of a more than *de
minimis* separate rate and use of rates from the First
Administrative Review, Changzhou Hawd, __ CIT at __, 44 F. Supp.
3d at 1385-88, it found Commerce's decision to individually
investigate Changzhou Hawd at such a late date in the proceeding
— and after repeatedly refusing to investigate a would-be
voluntary respondent, claiming lack of administrative resources
– to be arbitrary and capricious, and remanded accordingly. Id.
at 1388-91.

     On remand, Commerce again inferred that the separate rate
was more than *de minimis*, but declined, as it did previously, to
calculate a separate rate. Fourth Redetermination, ECF No. 130,

---

[17] Changzhou Hawd subsequently filed a petition for a writ of
mandamus to compel Commerce to refrain from the individual
investigation "until such time as this Court is satisfied that
[Commerce] has complied with its legal obligation to calculate a
lawful separate rate." Pl. Changzhou Hawd Flooring Co., Ltd.
Pet. for Writ of Mandamus, ECF No. 71.  Commerce agreed to
suspend the deadlines for Changzhou Hawd's individual
investigation, Letter from Commerce to Ct., ECF No. 82, and
sought voluntary remand to reconsider its decision to conduct a
full investigation of Changzhou Hawd, Def.'s Mot. for a
Voluntary Remand, ECF No. 92.  The court accordingly denied
Plaintiff's petition as moot. Changzhou Hawd Flooring Co. v.
United States, __ CIT __, 6 F. Supp. 3d 1358, 1360 n.9 (2014).
Plaintiff now seeks to renew its petition for writ of mandamus.
Pl.'s Br., ECF No. 132, at 15-16.  However, as the court has
already found Commerce's decision to conduct a full individual
investigation of Changzhou Hawd arbitrary and capricious, and
remanded to Commerce with instructions to find a different,
reasonable method of establishing Changzhou Hawd's rate,
Changzhou Hawd, __ CIT at __, 44 F. Supp. 3d at 1388-90, this
motion remains moot and therefore is again DENIED AS MOOT.

at 4-5.  Instead, because of "the limited time for which
Changzhou Hawd's specific margin will be effective, and in the
continued interest of conserving administrative resources,"[18]
Commerce has proposed to continue applying the 3.30 percent cash
deposit rate as calculated in the Inv. Amended Final
Determination, 76 Fed. Reg. at 76,691-92,[19] until the Second
Administrative Review, where Changzhou Hawd is again a separate
rate respondent, sets Changzhou Hawd's assessed rate.[20] Fourth

---

[18] In making this determination, Commerce emphasizes that its
"discretion in carrying out antidumping and countervailing duty
law should provide [Commerce] [with] the ability to conduct a
full individual examination of a respondent if [Commerce] finds
it necessary to do so," and only eschews this method because of
the court's remand order. Fourth Redetermination, ECF No. 130,
at 6.  Commerce is correct that it has the discretion to reopen
the record, Essar Steel Ltd. v. United States, 678 F.3d 1268,
1278 (Fed. Cir. 2012), however the exercise of that discretion
cannot be arbitrary and capricious, see Changzhou Hawd, __ CIT
at __, 44 F. Supp. 3d at 1388-90.

[19] This was the separate rate, calculated by taking the simple
average of the two non-de minimis mandatory respondent rates per
19 U.S.C. § 1673d(c)(5)(A). Inv. Final Determination, 76 Fed.
Reg. at 64,322; Inv. Amended Final Determination, 76 Fed. Reg.
at 76,691-92 (recalculating the separate rate, because of a
change in a mandatory respondent rate, to equal 3.30 percent).
On remand, however, changes to the underlying surrogate values
and calculation methodology reduced the rates for all mandatory
respondents to zero. First Redetermination, Consol. Ct. No. 12-
00007, ECF No. 132, at 2, 52.  The separate rate was
subsequently estimated under 19 U.S.C. § 1673d(c)(5)(B). Id.
at 27; Second Redetermination, ECF No. 52, at 6-8; Fourth
Redetermination, ECF No 130, at 4.

[20] While Changzhou Hawd entered subject merchandise during the
period of investigation (April 1, 2010 through September 30,
2010), Inv. Final Determination, 76 Fed. Reg. at 64,318, 64,323;
see also 19 C.F.R. § 351.204(b)(1), it did not during the period
of the First Administrative Review (May 26, 2011 (the
                                        (footnote continued)

Redetermination, ECF No. 130, at 5-6.  Commerce's deadline for
the completion of the Second Administrative Review is July 8,
2015. Id. at 5.

### STANDARD OF REVIEW

The court will sustain Commerce's determination on
remand if it is accordance with law, supported by substantial
evidence on the record, and complies with the court's remand
order. 19 U.S.C. § 1516a(b)(1)(B)(i); Jinan Yipin Corp., Ltd. v.
United States, 33 CIT 934, 936, 637 F. Supp. 2d 1183, 1185
(2009)

---

publication of the preliminary determination in the
investigation) through November 30, 2012 (the end of the month
immediately preceding the first anniversary month of the order),
AR1 Final Determination, 79 Fed. Reg. at 26,713; see also
19 C.F.R. § 351.213(e)(1)(ii); Multilayered Wood Flooring from
the [PRC], 76 Fed. Reg. 30,656, 30,657 (Dep't Commerce May 26,
2011) (preliminary determination of sales at less than fair
value) (dated May 26, 2011); Inv. Amended Final Determination,
76 Fed. Reg. at 76,690 (setting effective date of order at
December 8, 2011).  Changzhou Hawd again entered subject
merchandise during the period of the second administrative
review (December 1, 2012 through November 30, 2013). AR2 Prelim.
Determination, 80 Fed. Reg. at 1388, 1389.

The "preliminary determination in an [AD] duty
investigation constitutes the first point at which [Commerce may
require duties]," 19 C.F.R. § 351.205(a), here from the period
of the First Administrative Review, AR1 Final Determination,
79 Fed. Reg. at 26,713.  Accordingly, all entries made by
Changzhou Hawd that are actually subject to the AD duty order
(and therefore to a cash deposit requirement) come from the
Second Administrative Review period and are therefore "covered
by" the Second Administrative Review. See 19 U.S.C.
§ 1675(a)(2)(C).  The Second Administrative Review will "be the
basis for the assessment of [AD] duties" on these entries, and
"for deposits of estimated duties" going forward. Id.; see
AR2 Prelim. Determination, 80 Fed. Reg. at 1389.

**DISCUSSION**

I.   Commerce's Methodology

        Lacking more specific statutory guidance, Commerce

follows 19 U.S.C. § 1673d(c)(5) (the "[m]ethod for determining

[the] estimated all-others rate") to establish the separate

rate. See Fourth Redetermination, ECF No. 130, at 4.  Generally,

the separate rate is equal to the weighted average of the rates

calculated for individually investigated respondents, "excluding

any zero and de minimis margins, and any margins [based entirely

on facts otherwise available]." 19 U.S.C. § 1673d(c)(5)(A).

However, where, as here, all individually investigated rates are

zero, de minimis, or based entirely on facts otherwise

available, the statute allows Commerce to use "any reasonable

method to establish the estimated [separate rate]." 19 U.S.C.

§ 1673d(c)(5)(B).

        "[A]ny reasonable method" is a "lenient standard" that

leaves much to Commerce's discretion. Yangzhou Bestpak Gifts &

Crafts Co. v. United States, 716 F.3d 1370, 1378 (Fed. Cir.

2013).[21]  It is expected to mean a weighted average of the rates

---

[21] Presented with such broad language, the court considers only
whether "the agency's interpretation amounts to a reasonable
construction of the statute." Bestpak, 716 F.3d at 1377 (citing
Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
467 U.S. 837, 842–43 (1984)).  Further, "[t]o survive judicial
scrutiny, [Commerce's] construction need not be the only
reasonable interpretation or even the most reasonable
interpretation.  Rather, a court must defer to an agency's
reasonable interpretation of a statute even if the court might
                                          (footnote continued)

calculated for individually investigated respondents. 19 U.S.C.
§ 1673d(c)(5)(B); Uruguay Round Agreements Act, Statement of
Administrative Action ("SAA"), HR. Doc. No. 103-316 (1994)
at 873, reprinted in 1994 U.S.C.C.A.N. 4040, 4201.[22]  However, if
this method "is not feasible, or if it results in an average
that would not be reasonably reflective of potential dumping
margins for non-investigated exporters or producers," i.e., is
not reasonable in context, then "Commerce may use other
reasonable methods." SAA at 873, reprinted in 1994 U.S.C.C.A.N.
at 4201.

        Here, Commerce has determined that the expected method
results in a separate rate that is not reasonably reflective of
respondents' potential dumping margins. Fourth Redetermination,
ECF No. 130, at 4-5; Second Redetermination, ECF No. 52,
at 4-5.[23]  Instead, citing to the Second Redetermination (and the

---

have preferred another." Koyo Seiko Co. v. United States,
36 F.3d 1565, 1570 (Fed. Cir. 1994) (citing Zenith Radio Corp.
v. United States, 437 U.S. 443, 450 (1978)) (emphasis original).

[22] The SAA is recognized by Congress as an authoritative
expression concerning the interpretation and application of the
Tariff Act of 1930. 19 U.S.C. § 3512(d).

[23] Plaintiff argues that Commerce "has no basis at all in this
case to set aside the 'expected method' of calculating rates for
cooperating non-mandatory respondents," Pl.'s Br., ECF No. 132,
at 6, and asks that the court "direct [Commerce] to use the
'expected method' and assign Changzhou Hawd a de minimis
antidumping duty margin, excluding Changzhou Hawd from the
antidumping duty order on appeal in this case." Id., at 3.

      This argument fails in the same way and for the same
reasons it failed in Changzhou Hawd, __ CIT at __, 44 F. Supp.
                                        (footnote continued)

court's affirmance thereof), Commerce has inferred that the
separate rate (and therefore Changzhou Hawd's rate) is more than
*de minimis*. <u>Fourth Redetermination</u>, ECF No. 130, at 4-5; <u>see</u>
<u>Second Redetermination</u>, ECF No. 52, at 3-6.  Rather than
calculate a specific separate rate, however, Commerce decided to
continue applying Changzhou Hawd's current 3.30 percent cash
deposit rate, as calculated in the <u>Inv. Amended Final</u>
<u>Determination</u>, 76 Fed. Reg. at 76,691-92, in the brief interim
until the Second Administrative Review sets the assessed rate
for Changzhou Hawd's entries (i.e., until July 8, 2015). <u>Fourth</u>
<u>Redetermination</u>, ECF No. 130, at 5-6.  Accordingly, having
inferred from the record that the separate rate is more than *de
minimis* and applied a (more than *de minimis*) rate calculated for
Changzhou Hawd, Commerce may be said to have established a rate
"reasonably reflective" of Changzhou Hawd's "potential dumping
margin[]." <u>See</u> SAA at 873, <u>reprinted in</u> 1994 U.S.C.C.A.N.
at 4201.  Accordingly, Commerce's methodology is within a
reasonable construction of the statute. <u>Cf.</u> <u>Changzhou Hawd</u>, __

---

3d. at 1383-85. <u>Cf.</u> <u>Pls.' Comments on Second Redetermination</u>,
ECF No. 69, at 10-13 (making the same argument).  The statute
provides an "expected method," not a compulsory method.  "That
'any reasonable method' is available to Commerce, not just the
expected method, indicates the statute contemplates the
possibility of a more than *de minimis* separate rate even where,
as here, all individually investigated rates are zero."
<u>Changzhou Hawd</u>, __ CIT at __, 44 F. Supp. at 1384 (citing 19
U.S.C. § 1673d(c)(5)(B)).

CIT at __, 44 F. Supp. at 1383-85 (holding the same for the

other separate rate plaintiffs in this action).[24]

## II.   Commerce's Methodology in the Context of the Record

### A. Commerce's Inference that the Separate Rate is More Than De Minimis

As in the Second Redetermination, Commerce has

inferred that the separate rate is more than *de minimis* because

110 companies did not respond to Commerce's quantity and value

questionnaire. Fourth Redetermination, ECF No. 130, at 4; see

Second Redetermination, ECF No. 52, at 4.   Commerce again

corroborates its inference with the non-*de minimis* rates

calculated for separate rate respondents in subsequent

---

[24] Contrary to Plaintiff's argument, Pl.'s Br., ECF No. 132, at 2-3, this result is not barred by Changzhou Hawd, __ CIT at __, 44 F. Supp. 3d at 1388-90.  While a redetermination must comply with the remand order, Jinan Yipin, 33 CIT at 936, 637 F. Supp. 2d at 1185, the remand order here was "for further consideration" – that is, to find a "reasonable method" to establish Changzhou Hawd's rate, rooted in the already robust evidentiary record, supplemented as necessary given Commerce's continued "discretion to reasonably reopen the record." Changzhou Hawd, __ CIT at __, 44 F. Supp. 3d at 1390-91.  This is in keeping with this Courts role in reviewing Commerce's decisions. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.").

administrative reviews. Fourth Redetermination, ECF No. 130,

at 6-7; Second Redetermination, ECF No. 52, at 7, 30.[25]

        Commerce's inference of a more than *de minimis*

separate rate was reasonable in the Second Redetermination, and

remains reasonable here.[26]  Commerce has made the same rational

connection between the facts found (110 non-cooperating

respondents) and the choices made (the inference of a more than

---

[25] In the First Administrative Review, Commerce found dumping
margins of 0.00, 5.74, and 0.00 for Nanjing Minglin Wooden
Industry Co. Ltd., Fine Furniture, and Armstrong (all separate
rate respondents in the investigation, see Inv. Final
Determination, 76 Fed. Reg. at 64,323), respectively. AR1 Final
Determination, 79 Fed. Reg. at 26,714.  Fine Furniture's rate
became the separate rate (as the only individually investigated
non-*de minimis*, non-AFA rate). Id.  The final results were
subsequently amended, to correct a ministerial error, changing
Fine Furniture's rate to 5.92 percent (with the separate rate
revised accordingly). Multilayered Wood Flooring from the [PRC],
79 Fed. Reg. 35,314, 35,315-16 (Dep't Commerce June 20, 2014)
(amended final results of antidumping duty administrative
review; 2011-2012).

    In the Second Administrative Review, Commerce has
preliminarily found dumping margins of 0.00 and 18.27 for
individually investigated respondents Dalian Dajen Wood Co.,
Ltd. and Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.
("Senmao,") (both separate rate respondents in the
investigation, see Final Investigation, 76 Fed. Reg. at 64,323,
and First Administrative Review, see AR1 Final Determination,
79  Fed. Reg. at 26,714). AR2 Prelim. Determination, 80 Fed.
Reg. at 1389.  Senmao's rate became the separate rate (as the
only individually investigated non-*de minimis*, non-AFA rate).
Id.  Changzhou Hawd, as a separate rate respondent in the Second
Administrative Review, is subject to this separate rate. Id.
The final determination will be issued no later than July 8,
2015. Fourth Redetermination, ECF No. 130, at 5.

[26] See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351
(Fed. Cir. 2006) (explaining that the substantial evidence
standard asks whether, given the record as a whole, the agency's
determination was reasonable).

*de minimis* separate rate for the investigation).[27]  See Changzhou

Hawd, __ CIT at __, 44 F. Supp. 3d at 1385-87 (holding that the

same inference on the same record as that here was supported by

substantial evidence).[28]  This redetermination is only distinct

in that now Commerce also has the preliminary results from the

Second Administrative Review to corroborate its conclusion that

"the separate rate respondents' economic reality is more varied

and complicated than the mandatory respondent *de minimis* rates

[in the investigation] suggest" and to "confirm[] that the

separate rate respondents merit the closer consideration that

keeping them subject to the order affords, some receiving

---

[27] See Burlington Truck Lines, Inc. v. United States,
371 U.S. 156, 168 (1962) (holding that the agency must
articulate "rational connection between the facts found and the
choice made").

[28] Nonetheless, Plaintiff again argues that this inference is
unsupported by substantial evidence because Commerce relied on
the non-cooperation of 110 respondents, which is tantamount to
applying adverse facts available to cooperative respondents, and
impermissibly considered the presence of non-*de minimis*
calculated rates for separate rate respondents, including
Changzhou Hawd, in the First and Second Administrative Reviews.
Pl.'s Br., ECF No. 132, at 4-11.

These arguments remain as unpersuasive as before, when
Plaintiffs used them to challenge the same inference in the
Second Redetermination.  See Second Redetermination, ECF No. 52,
at 4 (Commerce making the same inference); Pls.' Comments on
Second Redetermination, ECF No. 69, at 15-19 (Plaintiffs making
the same argument against it); Changzhou Hawd, __ CIT at __,
44 F. Supp. 3d at 1385-87 (holding that Commerce's inference of
a greater than *de minimis* separate rate is supported by
substantial evidence, is not the equivalent of applying AFA to
separate rate respondents, and does not impermissibly consider
rates from subsequent stages, rather using them permissibly, for
corroboration).

*de minimis* rates and others not." <u>Changzhou Hawd</u>, __ CIT at __,

44 F. Supp. 3d at 1387.[29]

  Changzhou Hawd, in successfully challenging Commerce's

attempt to individually investigate it (and thereby obtain an

individual rate), retained its separate rate status, <u>Changzhou

Hawd</u>, __ CIT at __, 44 F. Supp. 3d at 1388-90, and as such, it

is subject to a reasonably determined separate rate.  As before,

"Commerce's conclusion that — based on the silence of 110

respondents, the resultant gap in the record, and the mixed

results of the first [and now second] administrative review[s] —

the separate rate (and thus Plaintiff['s] rate) in this

investigation is somewhat more than *de minimis* and less than

AFA, while not the only possible inference, is a reasonable

inference from the record." <u>Id.</u> at 1387.  Commerce's inference

---

[29] Plaintiff argues this does not follow because "the [c]ourt's
[previous] holdings were moored in the facts of [the First
Administrative Review]" and "[t]hose results cannot have
anything to do with Changzhou Hawd's economic reality because
the company had no sales in that period." <u>Pl.'s Br.</u>, ECF
No. 132, at 12.  This misapprehends the nature of Changzhou
Hawd's status as a separate rate respondent.  It is true that
the separate rate must reflect "commercial reality" and "bear
some relationship to [respondents'] actual dumping margins."
<u>Bestpak</u>, 716 F. 3d at 1380 (quotation marks and citation
omitted).  However, the separate rate remains an estimate
calculated for a group of respondents. <u>See</u> 19 U.S.C.
§§ 1673d(c)(5), 1677f-1(c).  Subsequently calculated rates from
multiple separate rate respondents "bear some relationship to
[respondents'] actual dumping margins" and tethers the separate
rate to economic reality. <u>See</u> <u>Bestpak</u>, 716 F. 3d at 1380.
Changzhou Hawd, having eschewed individual investigation, is a
separate rate respondent and subject to the separate rate.

of a more than *de minimis* separate rate remains supported by
substantial evidence.

  *B. Changzhou Hawd's Interim Cash Deposit Rate*

        Commerce, having reasonably inferred that the separate
rate is more than *de minimis*, again declines to calculate a
specific separate rate.  Instead, Commerce will continue to
apply the 3.30 percent cash deposit rate from the Investigation
Amended Final Determination, 76 Fed. Reg. at 76,691-92, until
the Second Administrative Review is completed and sets Changzhou
Hawd's actual assessed rate. Fourth Redetermination,
ECF No. 130, at 5-6.

        As Plaintiff points out, Pl.'s Br., ECF No. 132,
at 13, and Commerce concedes, Fourth Redetermination, ECF
No. 130, at 6, the 3.30 percent separate rate comes from the
Investigation Amended Final Determination and was remanded
because the individually-investigated rates from which it was
calculated were held to be unsupported by substantial evidence.
See Baroque Timber, __ CIT __, 925 F. Supp. 2d 1332.  However,
while this 3.30 percent rate lacks the under-pinnings to be a
precise calculation, the particular circumstances presented here
render it a reasonable estimate, a cash deposit rate, of
Changzhou Hawd's duty liability and therefore supported by
substantial evidence.

        First, any specific rate used here is without more
than temporary effect.  Regardless of the precise rate

calculated, Changzhou Hawd remains subject to the AD duty order because its rate, the separate rate, is reasonably more than *de minimis*. See 19 U.S.C. §§ 1673b(b)(3), 1673d(a)(4).  Changzhou Hawd's actual liability will be determined in the Second Administrative Review, where the assessed rate for Changzhou Hawd's entries will be set. See 19 U.S.C. § 1675(a)(2)(C).  The rate set here is only a cash deposit rate, an estimate of potential duties. 19 U.S.C. § 1673b(d)(1)(B).[30]  Because the Second Administrative Review must be completed no later than July 8, 2015, this rate will only apply for a matter of weeks, for a shorter period of time than it would take to remand and redetermine the rate. Fourth Redetermination, ECF No. 130, at 5. Thus, any rate calculated now is teetering on the brink of mootness.

Second, a rate of 3.30 percent is a conservative estimate that aligns with the margins calculated for separate rate respondents (including Changzhou Hawd) in subsequent reviews.  While each period of investigation or review is a "separate segment of proceedings with its own unique facts," Peer Bearing Co.-Changshan v. United States, 32 CIT 1307, 1310, 587 F.Supp.2d 1319, 1325 (2008) (quotation marks and

---

[30] Any difference between the assessed rate and cash deposit rate will result either in a refund if duties have been over-collected, or additional payments if duties have been under-collected. 19 U.S.C. § 1673f(b).

citation omitted), "if dumping occurred during the review, under
the discipline of an AD order, it is likely to have also
occurred [in the investigation], without the discipline of an AD
order to disincentivize such pricing behavior," Changzhou Hawd,
__ CIT at __, 44 F. Supp. 3d at 1386.[31]  In the First
Administrative Review, the separate rate is 5.92 percent.
Investigation Amended Final Determination, 79 Fed. Reg. at
35,315. In the Second Administrative Review, the separate rate
(Changzhou Hawd's rate as a separate rate respondent) is
preliminarily 18.92 percent. AR2 Prelim. Determination,
80 Fed. Reg. at 1389.  This suggests that the 3.30 percent rate
is a fair, if not conservative estimate (being less than any
calculated rate) of Changzhou Hawd's potential AD duty
liability, and therefore is reasonably reflective of the
company's economic reality.[32]

---

[31] This inference is in keeping with Commerce's permissible
rational actor assumption – i.e., that respondents will make
choices that will result in the lowest possible rate. See
Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d
1330, 1338-39 (Fed. Cir. 2002) (citing Rhone Poulenc, Inc. v.
United States, 899 F.2d 1185, 1190 (Fed. Cir. 1990)); Tianjin
Mach. Imp. & Exp. Corp. v. United States, __ CIT __,
752 F. Supp. 2d 1336, 1347 (2011) ("In other words, [Rhone
Poulenc] stands for the proposition that a respondent can be
assumed to make a rational decision to either respond or not
respond to Commerce's questionnaires, based on which choice will
result in the lower rate.").

[32] Cf. Navneet Publications (India) Ltd. v. United States,
Slip-Op. No. 15-41, 2015 WL 1963768, at *4 (CIT May 4, 2015)
("On remand, Commerce was tasked only with ensuring that the
all-others rate reflected plaintiffs' reality.  That the
                                        (footnote continued)

Accordingly, because Commerce's estimated rate is both temporary and conservative, in the interest of administrative and judicial economy,[33] it is reasonable for Commerce to continue using it as the cash deposit rate for Changzhou Hawd.

### CONCLUSION

For the foregoing reasons, and consistent with the court's opinion in Changzhou Hawd, ___ CIT ___, 44 F. Supp. 3d 1376, Commerce's determination in the Inv. Amended Final Determination, 76 Fed. Reg. 76,690 as amended by the Fourth Redetermination, ECF No. 130, is AFFIRMED.

Judgment will be entered accordingly.

/s/ Donald C. Pogue_____
Donald C. Pogue, Senior Judge

Dated: July 6, 2015
      New York, NY

---

[selected, not calculated] 0.5% all-others rate aligns with all-others rates from past reviews suggests that Commerce fulfilled this task.") (citations omitted).  Commerce further argues that "Changzhou Hawd's ability and willingness to sell subject merchandise in the U.S. market at a cash deposit rate of 3.30 percent reflects Changzhou Hawd's economic reality to the extent necessary under the specific facts of this redetermination" – that is, it is a temporary rate with a temporary effect, that has not yet pushed Changzhou Hawd out of the market. Fourth Redetermination, ECF No. 130, at 7.

[33] See USCIT Rule 1; Union Camp Corp. v. United States, 23 CIT 264, 280, 53 F. Supp. 2d 1310, 1325 (1999).